[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10159
Non-Argument Calendar
_____

D.C. Docket No. 0:19-cr-60117-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC ROPER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 25, 2021)

Before JILL PRYOR, LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Eric Roper ("Roper") appeals his conviction and his 210-month sentence for attempt to possess with intent to distribute a controlled substance, 3,4-Methylenedioxymethamphetamine ("MDMA"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  On appeal, Roper argues that the district court: (1) erred when it denied his motion to suppress concerning his statements to law enforcement on April 30, 2019, because agents continued to interrogate him after he had invoked the right to counsel, violating his Fifth and Sixth Amendment rights; (2) erred when it determined he was a career offender under the sentencing guidelines because his prior conviction for violating Fla. Stat. § 893.135 does not qualify as a "controlled substance offense" under U.S.S.G § 4B1.2(b); and (3) imposed a substantively unreasonable sentence because it relied on his criminal history to deny a downward variance in his sentence when his criminal history was already accounted for in the determination of his career offender status.  After thorough review, we affirm.

We review the denial of a motion to suppress a confession under a mixed standard -- we review findings of fact for clear error and the application of law to the facts de novo.  United States v. Bernal-Benitez, 594 F.3d 1303, 1318 (11th Cir. 2010).  Similarly, when reviewing a waiver of Miranda rights,[1] we review the district court's findings of fact for clear error and the application of the law to the facts de

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

novo. United States v. Farris, 77 F.3d 391, 396 (11th Cir. 1996). We review whether a prior conviction is a "controlled substance offense" under § 4B1.2(b) de novo. United States v. Lange, 862 F.3d 1290, 1293 (11th Cir. 2017). Finally, we review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

First, we are unpersuaded by Roper's argument that the district court erred when it denied his motion to suppress. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Consequently, in Miranda, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Thus, when an individual is subjected to custodial interrogation, law enforcement must warn a defendant prior to any questioning that he has the right to remain silent and the right to the presence of an attorney. Id. at 478-79.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e." U.S. Const. amend. VI. The Supreme Court has held that the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that

3

is, at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (quotation omitted). In other words, the Sixth Amendment right to counsel ordinarily does not arise until there is a formal commitment by the government to prosecute, like when "the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified." United States v. Gouveia, 467 U.S. 180, 189 (1984) (quotation omitted). Consequently, "[t]he mere filing of a complaint and the issuance of a warrant for the [accused's] arrest," does not constitute a formal commitment by the government to commence a criminal prosecution for purposes of the Sixth Amendment. Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1195 (11th Cir. 2003) (quotation omitted).

Under Miranda, statements and evidence obtained as a result of a custodial interrogation are inadmissible unless the defendant was first warned of his rights and then knowingly waived those rights. United States v. Parr, 716 F.2d 796, 817 (11th Cir. 1983). The government bears the burden of establishing that a defendant made a knowing, voluntary, and intelligent waiver of his Miranda rights by a preponderance of the evidence. Id. We consider a Miranda waiver under the totality of the circumstances, including the details of the interrogation and the defendant's characteristics. United States v. Ransfer, 749 F.3d 914, 935 (11th Cir. 2014). "Only

4

if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." United States v. Farley, 607 F.3d 1294, 1326 (11th Cir. 2010) (quotation omitted).

When a defendant has invoked his right to counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the defendant himself initiates further communication, exchanges, or conversations with law enforcement. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Thus, the defendant's statements are not subject to exclusion if he initiated further discussion and knowingly and intelligently waived the right he had previously invoked. Oregon v. Bradshaw, 462 U.S. 1039, 1041-46 (1983). A defendant "initiates" further conversation with law enforcement when his statements evidence "a willingness and a desire for a generalized discussion about the investigation." Id. at 1045-46.

Here, the district court did not err when it denied Roper's motion to suppress the confession that Roper made on April 30, 2019 (the "April 30th Confession"). For starters, there was no violation of Roper's Sixth Amendment rights because those rights had not yet attached, since Roper had been arrested but no formal "judicial criminal proceedings" had been commenced. See McNeil, 501 U.S. at 175; Lumley, 327 F.3d at 1195.

5

As for his Fifth Amendment right to counsel, it is undisputed that Roper invoked this right at the time of his April 30 arrest when he told law enforcement that he wanted to talk to somebody, he was explicitly asked if he wanted a lawyer, and he responded affirmatively. However, the April 30th Confession is not subject to exclusion because, after Roper invoked his Fifth Amendment right to counsel, he reinitiated discussion with law enforcement and then knowingly and intelligently waived his previously asserted right. See Bradshaw, 462 U.S. at 1041-46. As the record shows, after initially invoking the right to counsel, Roper: (1) asked lead agent Marco Suarez to explain what cooperation would entail; (2) learned that agents could no longer speak with him because he had invoked his right to counsel, but that he could continue talking with them if he agreed to waive his rights; (3) told agent Suarez he was willing to speak with the agents; and, (4) when Special Agent Nicole Nualart asked where he would like to be interviewed, asked to speak on the porch area. On this record, Roper "initiated" further conversation with law enforcement with conduct and statements that displayed "a willingness and a desire for a generalized discussion about the investigation." See id. at 1045-46.

At that point, Special Agent Nualart read Roper his Miranda rights, and Roper knowingly and intelligently waived them. See Parr, 716 F.2d at 817. Specifically, Roper responded affirmatively to Special Agent Nualart's question about whether he understood his Miranda rights and to her question about whether he was willing

to speak with them, and then subsequently made incriminating statements to Nualart about the drugs at issue. Moreover, as the district court observed, Roper's criminal history, along with his statement that this was not his "first rodeo" when he asked for an attorney, indicates a familiarity and understanding of Miranda and the criminal justice system. Nor is there any evidence, nor has Roper argued, that agents engaged in any deceptive or coercive conduct. Thus, the totality of the circumstances demonstrates that Roper made an uncoerced choice and had the "requisite level of comprehension" to make a valid Miranda waiver. See Farley, 607 F.3d at 1326. We, therefore, affirm the district court's denial of Roper's motion to suppress the April 30th Confession.

We also find no merit to Roper's claim that the district court erred when it determined he was a career offender under the sentencing guidelines. A defendant is a career offender if: (1) the defendant is at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is either a "crime of violence" or a "controlled substance offense;" and (3) the defendant has at least two prior convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" is an offense under federal or state law, punishable by more than one year of imprisonment, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled

7

substance, or possession of a controlled substance, with intent to manufacture, import, export, distribute, or dispense.  U.S.S.G. § 4B1.2(b).

In United States v. Shannon, we held that a defendant's conviction for trafficking cocaine in violation of Fla. Stat. § 893.135 did not constitute a "controlled substance offense."  631 F.3d 1187, 1189 (11th Cir. 2011).  There, it was unclear which part of the state statute the defendant had violated; we therefore had to assume the prior conviction involved only the purchase of cocaine -- the least prohibited act under the statute.  Id.  Because the sentencing guidelines do not include the act of purchasing in its definition of a "controlled substance offense," the defendant's prior conviction under § 893.135 was not a "controlled substance offense."  Id.

In United States v. Smith, however, we held that a conviction under Fla. Stat. § 893.13 constitutes a "controlled substance offense," under U.S.S.G. § 4B1.2(b). 775 F.3d 1262, 1268 (11th Cir. 2014).  First, the definition of "controlled substance offense" under U.S.S.G. § 4B1.2(b) does not require "that a predicate state offense includes an element of mens rea with respect to the illicit nature of the controlled substance."  Id.; see also United States v. Pridgeon, 853 F.3d 1192, 1198, 1200 (11th Cir. 2017) (rejecting the argument that Smith was wrongly decided and affirming Smith's holding that convictions under Fla. Stat. § 893.13 qualify as "controlled substance offenses" under the Sentencing Guidelines).  Second, Smith rejected the argument that Fla. Stat. § 893.13's definition of a controlled substance was too broad

and must be tied to statutory federal analogues or generic federal definitions. See

Pridgeon, 853 F.3d at 1198; Smith, 775 F.3d at 1267.

We are bound by prior panel decisions unless or until we overrule them while

sitting en banc, or they are overruled by the Supreme Court. United States v. Jordan,

635 F.3d 1181, 1189 (11th Cir. 2011); see also United States v. Bishop, 940 F.3d

1242, 1253-54 (11th Cir. 2019), cert. denied, 140 S. Ct. 1274 (2020) (holding that

we are bound by Smith).

In this case, regardless of Roper's prior conviction for violating Fla. Stat. §

893.135, the record demonstrates that Roper nevertheless had two prior convictions

for violating Fla. Stat. § 893.13.  Moreover, as we've detailed, our prior decisions in

Smith and Pridgeon foreclose any argument that convictions under Fla. Stat. §

893.13 are not "controlled substance offenses" under U.S.S.G. § 4B1.2(b).  See

Pridgeon, 853 F.3d at 1198, 1200; Smith, 775 F.3d at 1268.  We are bound by our

holdings under the prior precedent rule.  See Bishop, 940 F.3d at 1253-54; Jordan,

635 F.3d at 1189.  Thus, Roper qualified as a career offender under U.S.S.G §

4B1.1(a) because he had at least two prior convictions for "controlled substance

offenses."  See U.S.S.G § 4B1.1(a).  We affirm the district court's determination of

Roper's career offender status.

Finally, Roper has not shown that his sentence was substantively

unreasonable.  In reviewing the "'substantive reasonableness of [a] sentence

9

imposed under an abuse-of-discretion standard,'" we consider the "'totality of the circumstances.'" Pugh, 515 F.3d at 1190 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[2]  The court must consider all of the § 3553(a) factors, but it may give greater weight to some factors over others -- a decision which is within its sound discretion.  United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015).  However, a sentence may be substantively unreasonable when a court unjustifiably relies on any single § 3553(a) factor, fails to consider pertinent § 3553(a) factors, bases the sentence on impermissible factors, or selects the sentence arbitrarily.  Pugh, 515 F.3d at 1191-92.  A sentence that suffers from one of these symptoms is not per se unreasonable; rather, we must examine the totality of the circumstances to determine the sentence's reasonableness.  Id. at 1192.

"[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor . . . as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented."  United States v. Snipes,

[2]     The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted).  We will vacate a sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation omitted).  Notably, even if we "might reasonably have concluded that a different sentence was appropriate," this finding alone "is insufficient to justify reversal."  United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quoting Gall, 552 U.S. at 51).  We generally presume that a sentence within the guidelines range is reasonable, as the sentencing guidelines themselves reflect the purpose and application of the § 3553(a) factors.  Irey, 612 F.3d at 1185.  The party challenging the sentence bears the burden to show it is unreasonable.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

Here, the district court did not abuse its discretion when it sentenced Roper to the bottom of the applicable guideline range.  At the sentencing hearing, the district court considered and applied the § 3553(a) factors -- including the applicable sentencing guideline range, Roper's history and characteristics, the seriousness of the offense, and that the sentence it was going to impose should promote respect for the law and deter criminal conduct. See 18 U.S.C. §§ 3553(a)(1)-(2), (4).  The district court added that it had considered the request for a downward variance but could not

11

articulate a justification for that variance based on the record, which revealed that Roper had multiple prior convictions for drug trafficking, there was a large amount of MDMA involved in the instant offense, and Roper had a serious criminal history.

As for Roper's argument that the district court impermissibly double-accounted for his criminal history when it imposed his sentence and denied a downward variance after determining he was a career offender, he cites to no authority to support his proposition. Rather, the statute requires the district court to consider the § 3553(a) factors when imposing a sentence, which include the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). Moreover, the sentence is substantively reasonable because it is within the applicable guideline range and there is no evidence that the district court selected the sentence arbitrarily, failed to consider any pertinent § 3553(a) factor, or unjustifiably relied on a single factor. See Pugh, 515 F.3d at 1191-92.

In short, Roper's sentence is not outside the range of reasonableness nor are we left with the firm conviction that the district court committed a clear error. Accordingly, Roper has failed to meet his burden of demonstrating that his sentence was unreasonable, and we affirm.

**AFFIRMED**.