[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15164

_____

D.C. Docket No. 5:16-cr-00006-RH-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ARTHUR KYLE LANGE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 17, 2017)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, Circuit Judge, and
MOORE,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable K. Michael Moore, United States District Chief Judge for the Southern District of
Florida, sitting by designation.

This appeal requires us to decide whether a Florida conviction of principal to attempted manufacture of a controlled substance, *see* Fla. Stat. § 777.011, qualifies as a "controlled substance offense," United States Sentencing Guidelines Manual § 4B1.2(b) (Aug. 2016). We must also decide whether the government engaged in sentencing factor manipulation when it arranged multiple transactions in a sting operation. Arthur Kyle Lange sold guns and drugs to a confidential informant in five separate transactions. After Lange pleaded guilty to various firearm and drug offenses, the district court sentenced him to a term of 130 months of imprisonment, at the low end of his advisory guideline range. Lange objected to receiving a higher base offense level for his prior Florida conviction of principal to attempted manufacture of methamphetamine, but the district court overruled his objection. Lange argues that because the Florida statute for principal liability makes an individual liable if he aids and abets an attempted crime without requiring a completed offense, the Florida statute is too broad to be a "controlled substance offense" under the Guidelines. But the definition of "controlled substance offense" and the authoritative commentary make clear that the crime of aiding an attempt to manufacture is "an offense . . . that prohibits . . . manufacture," U.S.S.G. § 4B1.2(b). Because a conviction of principal to attempted manufacture of a controlled substance qualifies as a "controlled substance offense," and because

2

Lange cannot prove that the government engaged in sentencing factor manipulation when it arranged multiple transactions, we affirm.

## I. BACKGROUND

With the help of a confidential informant, federal agents facilitated a total of five controlled purchases from Arthur Kyle Lange. In the first transaction, Lange agreed to sell the informant Xanax and a firearm and discussed future purchases. Over a few months, Lange sold the informant more drugs and firearms, including a gun with an obliterated serial number. After he was arrested, Lange pleaded guilty to five counts of unlawful possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), three counts of distributing alprazolam, 21 U.S.C. § 841(a)(2), (b)(2), and two counts of distributing methamphetamine and alprazolam, *id.* § 841(a)(1), b(2), (b)(1)(C). The district court accepted Lange's guilty plea and, with the parties' consent, applied the amended Sentencing Guidelines that were to take effect on August 1, 2016.

Lange's criminal history included a 2011 conviction for the Florida offense "Principal to Attempted Manufacture of Controlled Substance." Lange objected to the factual description of the offense in the presentence investigation report but agreed that he had the prior conviction. For the purpose of determining Lange's

sentence, the district court counted this prior conviction as a "controlled substance offense," U.S.S.G. § 4B1.2(b).

Lange's sentencing range was a function of his prior conviction of a controlled substance offense as well as the specific facts surrounding his crimes. Under the firearm guideline, U.S.S.G. § 2K2.1, unlawful possession of a firearm after committing a controlled substance offense provided a base offense level of 20. *Id.* § 2K2.1(a)(4)(A). Because the offense involved five firearms, the district court added two levels. *Id.* § 2K2.1(b)(1)(A). Because the offense involved a firearm with an obliterated serial number, the district court added four levels. *Id.* § 2K2.1(b)(4)(B). Because Lange possessed the firearm in connection with another felony offense—the sale of drugs along with the firearms—the district court added an additional four levels. *Id.* § 2K2.1(b)(6)(B). Because Lange accepted responsibility and assisted authorities, the district court subtracted three levels. *Id.* § 3E1.1(a), (b). That calculation provided a total offense level of 27. Combined with Lange's criminal history category of VI, the Guidelines provided a sentencing range of 130–162 months of imprisonment. After considering the statutory sentencing factors, 18 U.S.C. § 3553(a), the district court imposed concurrent sentences of 130, 120, and 60 months, three years of supervised release, and $1,000 in a special monetary assessment.

## II. STANDARDS OF REVIEW

This Court reviews *de novo* whether a prior conviction is a "controlled substance offense" under Section 4B1.2(b). *See United States v. Frazier*, 89 F.3d 1501, 1505 (11th Cir. 1996). When a party raises an argument for the first time on appeal, this Court reviews for plain error. *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015). We may not correct an error that the defendant failed to raise in the district court unless the error is plain, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005); Fed. R. Crim. P. 52.

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that Lange's prior conviction qualifies as a "controlled substance offense" under the Guidelines. Second, we explain that the government did not engage in sentencing factor manipulation.

### A.    *Controlled Substance Offense*

The district court determined that Lange's prior conviction for "Principal to Attempted Manufacture of Controlled Substance" was a "controlled substance offense" as defined by the Guidelines, U.S.S.G. § 4B1.2(b). The parties do not

5

contest that the Florida crime of "Manufacture of Controlled Substance" is a controlled substance offense. They instead dispute whether Florida principal liability as applied to a controlled substance offense reaches conduct beyond the scope of the inchoate liability covered by the Guidelines.

We apply the categorical approach to determine what constitutes a controlled substance offense, which means that we compare the definition in the Guidelines with the statutory offense, "not the conduct underlying the conviction." *United States v. Lipsey*, 40 F.3d 1200, 1201 (11th Cir. 1994). "We look to the plain language of the definitions to determine their elements," and we "need not search for the elements of 'generic' definitions of . . . 'controlled substance offense' because the[] term[] [is] defined by . . . the Sentencing Guidelines." *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014).

The Guidelines define a "controlled substance offense" as including any state or federal offense punishable by a year or more for the manufacturing or trafficking of a controlled substance:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

6

U.S.S.G. § 4B1.2(b). The commentary in Application Note 1 further states that this definition includes inchoate crimes: "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2(a) cmt. n.1 (emphasis omitted). "[T]h[is] commentary constitutes 'a binding interpretation' of the term 'controlled substance offense.'" *United States v. Smith*, 54 F.3d 690, 693 (11th Cir. 1995) (citation omitted).

"[O]ur interpretation of the Sentencing Guidelines is governed by traditional rules of statutory construction," *United States v. Shannon*, 631 F.3d 1187, 1189 (11th Cir. 2011), and "[d]efinition sections and interpretation clauses are to be carefully followed," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 225 (2012). We give an application note "its most natural reading" even if "it actually enlarges, rather than limits, the applicability of the enhancement." *United States v. Probel*, 214 F.3d 1285, 1288 (11th Cir. 2000). We presume that the Sentencing Commission "said what it meant and meant what it said." *Shannon*, 631 F.3d at 1190 (quoting *United States v. Browne*, 505 F.3d 1229, 1250 (11th Cir. 2007)).

Lange's prior conviction is not for "aiding and abetting" or "attempting" a controlled substance offense; instead, Lange was convicted under a Florida statute

7

that defines principal liability. Florida law creates principal liability for aiding and abetting an attempted crime:

> Principal in first degree. – Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, *and such offense is committed or is attempted to be committed*, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Fla. Stat. § 777.011 (emphasis added). We must decide whether the definition of "controlled substance offense," as informed by Application Note 1, is broad enough to encompass liability as a principal in the first degree under Florida law.

Lange relies on our opinion in *Young v. United States*, 936 F.2d 533 (11th Cir. 1991), to argue that we must construe the Guidelines narrowly, but we disagree. *Young* explained that when applying a previous version of the Guideline that included offenses "substantially equivalent to the offenses listed," we considered as "similar" only other drug trafficking convictions. *Id.* at 536–37. *Young* did not create a general principle of reading the Guidelines narrowly, but instead interpreted a general phrase to "apply only to . . . things of the same general kind or class specifically mentioned," Scalia & Garner, *supra*, at 199.

Although Application Note 1 states that the term "'controlled substance offense' include[s] the offenses of aiding and abetting, conspiring, and attempting

8

to commit such offenses," this list is not exhaustive. Lange argues that the word "includes" expands the definition of "controlled substance offense" to reach the three listed examples and nothing else. But in discussing its general principles, the Guidelines explain that "[t]he term 'includes' is not exhaustive." U.S.S.G. § 1B1.1 cmt. n.2 (emphasis omitted). We have applied this principle across the Guidelines. *See, e.g.*, *Probel*, 214 F.3d at 1288. And the "traditional rules of statutory construction," *Shannon*, 631 F.3d at 1189, provide that "the word *include* does not ordinarily introduce an exhaustive list." Scalia & Garner, *supra*, at 132, 226; *see also Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). The definition of "controlled substance offense" is not necessarily limited to aiding and abetting, conspiring, and attempting.

The definition of "controlled substance offense" in Section 4B1.2(b) "require[s] only that the predicate offense . . . 'prohibit[s]' certain activities related to controlled substances." *Smith*, 775 F.3d at 1267 (third alteration in original) (internal citations omitted). Application Note 1 informs how we should interpret this definition. "Prohibit" can mean "[t]o forbid . . . by a command, statute, law, or other authority" or "[t]o ban or exclude . . . from an action or place; to prevent, hinder." *Prohibit*, *Oxford English Dictionary* (online ed. 2017); *see also Prohibit*,

9

*Webster's Second International Dictionary* 1978 (1961) ("1. To forbid by authority or command; to interdict; . . . 2. To stop or prevent (a person); to render impossible (an action); to hinder; debar."). Because Application Note 1 tells us that an offense prohibits the manufacture of a controlled substance when it prohibits aiding and abetting, conspiring, and attempting that manufacture, U.S.S.G. § 4B1.2(a) cmt. n.1, we must not construe "prohibit" too narrowly. "[C]ontrolled substance offense" cannot mean only offenses that forbid conduct outright, but must also include related inchoate offenses that aim toward that conduct. A ban on attempting manufacture will bar some unsuccessful attempts, but it will also make it practically impossible to manufacture without violating the law. So too a ban on conspiring to manufacture drugs hinders manufacture even though it will ban conduct that is not itself manufacturing. In precisely the same way, a ban on aiding and abetting manufacture, whether or not the offense is completed, prevents and hinders manufacture. Because a statute that forbids aiding and abetting an attempt essentially forbids manufacture itself, the crime of aiding an attempt to manufacture is "an offense . . . that prohibits . . . manufacture," *id.* § 4B1.2(b).

This conclusion is bolstered by the substantial similarity between the Florida statute for principal liability and the offenses listed in Application Note 1—aiding and abetting, attempt, and conspiracy. The Supreme Court of Florida refers to

10

section 777.011 as the "aider-abettor statute[,] which makes all participants in a crime principals in the first degree." *Potts v. State*, 430 So. 2d 900, 901 (Fla. 1982). "The Supreme Court of Florida has held that to be guilty as a principal for a crime committed by another, the defendant 'must intend that the crime be committed and do some act to assist the other person in actually committing the crime.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 689 (11th Cir. 2005) (quoting *Staten v. State*, 519 So.2d 622, 624 (Fla. 1988)). The federal law of aiding and abetting, 18 U.S.C. § 2, also requires that the defendant have the intent to aid the commission of a crime and do some act that contributed to the offense. *United State v. DePace*, 120 F.3d 233, 238 (11th Cir. 1997). And although Florida law does not require there be a completed offense, the examples of attempt and conspiracy in the application note make clear that to "prohibit" an offense does not require a state to prohibit the completed offense. The text of the application note covers "prohibit[ing]" manufacture of controlled substances by prohibiting those who aid and abet the attempt to do so.

The district court did not err. Interpreting the Guideline in the light of the authoritative interpretation provided in Application Note 1, Florida prohibits a controlled substance offense when it prohibits principal liability for a controlled substance offense. Lange's Florida conviction for "Principal to Attempted

11

Manufacture of Controlled Substance" qualifies as a "controlled substance offense" under the Guidelines.

### B.      Sentencing Factor Manipulation

Because Lange did not raise the argument that the government engaged in sentencing factor manipulation before the district court, we review for plain error. Lange argues that he is due relief because the government wrongfully manipulated his sentence by encouraging the commission of five separate criminal transactions instead of arresting him after the first sale. We disagree.

The doctrine of sentencing factor manipulation asks "whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, or due process claim, must sometimes be filtered out of the sentencing calculus." *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998) (alterations adopted) (citation omitted). "[T]o bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct." *United States v. Ciszkowski*, 492 F.3d 1264, 1271 (11th Cir. 2007). "Government-created reverse sting operations are recognized and useful methods of law enforcement investigation," so "[t]he standard for sentencing factor manipulation is high." *Id.* This Court has never reduced a sentence on the basis of sentencing factor manipulation, *see United*

12

*States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009), so no binding precedent requires this Court to countenance sentencing factor manipulation as a legitimate defense.

Even if a sentence can be reduced based on sentencing factor manipulation, Lange cannot prove error, let alone plain error in the failure of the district court to determine *sua sponte* that the government engaged in extraordinary misconduct. "A plain error is an error that is 'obvious' and is 'clear under current law.'" *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). And "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). Lange fails to identify any precedent that establishes that law-enforcement officers have a duty to arrest as soon as a single illegal transaction has occurred or that a sting operation that engages in multiple transactions is extraordinary misconduct. To the contrary, this Court has held that the government's decision to make "four purchases instead of just one . . . is no more manipulative than . . . setting in motion a fictitious sting operation involving a large quantity of drugs instead of a small one." *United States v. Govan,* 293 F.3d 1248, 1251 (11th Cir. 2002); *see also Sanchez*, 138 F.3d at 1414 ("The fact that the government's . . . operation involved a large quantity of

13

drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing."). Even when multiple transactions are intended to "make[] it easier to obtain a conviction, . . . there is nothing wrong with the government attempting to strengthen its case for conviction." *Govan,* 293 F.3d at 1251. And as the government argues, "conducting five transactions was not outrageous" in the light of a legitimate government interest in "remov[ing] firearms from the streets, especially those accessible to a convicted felon dealing drugs." Lange "has not met his burden of establishing that the government's conduct is sufficiently reprehensible to constitute sentencing factor manipulation," *Ciszkowski*, 492 F.3d at 1271. "Because [Lange] is unable to meet his burden to show plain error, his argument fails." *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006).

## IV. CONCLUSION

We **AFFIRM** Lange's sentence.

14