[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12673
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20918-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW ECKEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 30, 2018)

Before TJOFLAT, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

A grand jury indicted Andrew Eckel on one count of being a felon in possession of a firearm.  18 U.S.C. § 922(g)(1).  Eckel was convicted by a jury and sentenced to sixty-three months of imprisonment.  He appeals the District Court's ruling on an evidentiary issue and its denial of his motion for a judgment of acquittal.  We affirm the decisions of the District Court on both matters.

I.

A.

On November 16, 2015, Officer Anthony Castellanos was patrolling Florida City, Florida in the early morning hours.  He was on the lookout for a white vehicle with four doors.  Sometime past 2:00 A.M., he saw a vehicle that matched this description and began to follow it.  The vehicle came to an immediate halt, and then proceeded slowly forward.  Officer Castellanos continued to follow the vehicle, keeping his eyes on the driver.  The vehicle took a turn.  After making the turn, the driver of the vehicle leveled a revolver at Officer Castellanos and fired three shots.  Officer Castellanos dove into the center console of his police cruiser and accelerated past the vehicle.  He then made a U-turn, called dispatch to report the gunfire, and pursued the vehicle.

A number of police officers joined in the pursuit.  Officer Frantz Hardy was one of them.  He was closest to the white vehicle.  And as the vehicle approached a trailer park, its driver opened the door and leapt out.  Officer Hardy exited his

2

police cruiser and instructed the driver to stop and to get on the ground. The driver did not comply. He instead jumped over a cement wall and ran into the trailer park. Officer Hardy did not pursue the driver. But he did get a clear look at him. He radioed dispatch and described the driver as a Spanish male with a ponytail and a goatee who was approximately five feet and six inches tall. He also stated that the driver was wearing black clothes.

After the driver fled, the police established a perimeter around the trailer park. They also investigated the white car and its surroundings. Outside the driver's side of the car they found a revolver with three spent rounds and a pair of black gloves. Inside the car, they found a ski mask on the driver's seat. The police also discovered an intoxicated woman in the passenger's seat; she declined to identify the driver. The car was dusted for fingerprints.

Later that morning, Officer Anthony Prieto apprehended Andrew Eckel in the trailer park because he matched the description given out in the dispatch. Eckel sported a goatee and wore black shorts and black shoes. He also had a number of tattoos, including one on his neck that read: "Blessed." Eckel did not, however, have a ponytail and he was not five foot and six inches tall. Soon after his apprehension, Eckel was shown to Officer Hardy at the police's command post. Officer Hardy identified Eckel as the man who fled from the white car.

Later, the police determined that the black gloves and the ski mask contained Eckel's DNA. They found Eckel's fingerprints on the driver's side of the car. It also came to light at trial that Felix Zelaya, a tattoo artist who lived in the area, saw Eckel on the night of the incident. According to Zelaya's testimony, Eckel arrived at his residence with a woman who was extremely intoxicated around 9:00 or 10:00 P.M. Zelaya then tattooed the word "Blessed" on Eckel's neck. After the tattoo was finished, Eckel gave Zelaya a ride to a nearby apartment. The time was approximately 11:00 to 11:30 P.M. Zelaya testified that Eckel was driving a white, four-door Kia.

## B.

Before trial, the parties stipulated to the admission of the police dispatch recordings for the night of November 16, 2015. At trial, the Government called Officers Castellanos and Hardy to testify as to their observations on the night of the incident. In its direct examination of Officer Castellanos, the Government did not reference the dispatch recording. It asked him only about what he observed on that night. On cross examination, Eckel sought to question Officer Castellanos on the portion of the dispatch recording that contained Officer Hardy's description of the suspect who fled the white car. The District Court refused to allow this cross examination unless Eckel laid a foundation for it. It stated: "If you wish to play that part [of the dispatch recording], identify first that [Officer Castellanos] knows

4

[Officer] Hardy's voice." But faced with the prospect of establishing this foundation, Eckel opted to "stay away from" cross examining Officer Castellanos as to the description in the dispatch recording.

Later, when the Government called Officer Hardy to the stand, the dispatch recording was played, including the part where Officer Hardy described the suspect. The Government questioned Officer Hardy on the description he gave of the driver of the white car in the dispatch recording. And Eckel received an opportunity to cross examine Officer Hardy as to that description.

At the close of the Government's case, Eckel moved for judgment of acquittal on the ground that the Government had not introduced sufficient evidence to support a finding of guilt. The District Court denied this request, finding that a reasonable factfinder could find Eckel guilty based on the evidence presented.

The jury rendered a guilty verdict. Eckel has appealed the District Court's demand that he establish a foundation before cross examining Officer Castellanos on Officer Hardy's description of the suspect in the dispatch recording. He also appeals the denial of his motion for judgment of acquittal.

## II.

Eckel contends that the District Court erred in forbidding him from cross examining Castellanos as to the dispatch recording unless he established a foundation for it. We review the evidentiary rulings of a district court for an abuse

of discretion. *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012). The Federal Rules of Evidence forbid cross examination on matters not raised during direct examination, unless the district court chooses to permit such an inquiry. Fed. R. Evid. 611(b).

In this case, the Government called Officer Castellanos as its witness. On direct examination, the Government did not question Officer Castellanos about the description of the suspect on the dispatch recording. It did not play the portion of the dispatch recording that contained the description of the suspect. But on cross examination, Eckel questioned Officer Castellanos about the physical description of the suspect given in the dispatch recording. Specifically, Eckel asked Officer Castellanos: "What was that physical description?" The Government objected.

The District Court refused to allow Eckel to cross examine Officer Castellanos on the description given in the dispatch recording unless Eckel laid a foundation for it. If Eckel did not lay a foundation, the District Court reasoned, the jury would not be able to understand the relevance of the recording or assess the identity or the credibility of the individuals speaking in it. If a foundation was laid for the dispatch recording, however, the District Court said that Eckel was free to play it and cross examine Officer Castellanos as to its contents. But Eckel decided to "move off" the matter. Later in the trial, the description in the recording was

played before the jury during the testimony of Officer Hardy.  Eckel cross examined Officer Hardy on it.

It is clear that the District Court did not abuse its discretion in refusing to allow Eckel to cross examine Officer Castellanos as to the description of the suspect in the dispatch recording.  This matter was not discussed on direct examination and a foundation had not been laid.  Officer Castellanos also testified that he did not see the suspect clearly enough to identify him.  Consequently, any cross examination of Officer Castellanos on the description in the recording would have been frivolous and confusing to the jury.  The District Court therefore had good reasons to forbid the cross examination of Castellanos on the dispatch recording, unless, of course, Eckel laid the foundation.

Eckel also argues that the District Court violated the Sixth Amendment by declining to allow him to cross examine Castellanos about the description in the recording.  He did not raise this constitutional objection before the District Court, and therefore we review this claim for plain error.  *See United States v. Woodard*, 387 F.3d 1329, 1331 (11th Cir. 2004).  For us to reverse on this standard, the error must be "obvious" and "clear" under current law.  *United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) (quotation omitted).  We must conclude: (1) there was an error; (2) the error was plain; (3) the error seriously affected the defendant's

7

substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Woodard*, 387 F.3d at 1331.

The Sixth Amendment provides a criminal defendant the right to confront the witnesses against him. U.S. Const. amend. VI. This includes a right to cross examine witnesses. *United States v. Jeri*, 869 F.3d 1247, 1262 (11th Cir. 2017). But the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985). A district court has "wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1436 (1986).

Eckel failed to lay a foundation for the dispatch recording. He also wished to cross examine Officer Castellanos as to the description of the suspect in the recording, even though Officer Castellanos testified that he did not see the suspect well enough to identify him. Accordingly, any examination of Officer Castellanos as to Officer Hardy's description of the suspect would have been irrelevant and better done during the cross examination of Officer Hardy himself. The District Court therefore committed no obvious or clear error in refusing to allow Eckel to

8

cross examine Officer Castellanos as to the description of the suspect in the recording unless he laid a foundation for it.[1]

### III.

Eckel claims that the Government presented insufficient evidence identifying him as the individual who discharged the firearm, and therefore that the District Court should have granted his motion for judgment of acquittal. We review *de novo* the denial of a motion for judgment of acquittal. *United States v. Seher*, 562 F.3d 1344, 1364 (11th Cir. 2009). We affirm the denial if a reasonable factfinder could have found that the evidence established guilt beyond a reasonable doubt. *Id.*

It is a crime for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm or ammunition that was in or affected interstate commerce. 18 U.S.C. § 922(g)(1). To prove that a defendant was a felon in possession of a firearm, the government must show: (1) the defendant was a convicted felon, (2) who knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

---

[1] And even if we were to assume that the District Court plainly erred, the error was harmless because the jury heard the description in the dispatch recording during the testimony of Officer Hardy, and Eckel had the opportunity to cross examine him on it. *See United States v. Ndiaye*, 434 F.3d 1270, 1286 (11th Cir. 2006) ("The denial of a defendant's Confrontation Clause right to cross-examination is examined for harmless error.").

9

Eckel stipulated that he was a convicted felon and that the firearm and ammunition traveled in interstate commerce. We need thus only consider whether the Government presented evidence sufficient for a jury to conclude beyond a reasonable doubt that Eckel knowingly possessed the firearm and ammunition.

It clearly did. Officer Castellanos testified that the driver of the white car fired three shots at him. Officer Hardy saw the man who jumped out of the car and provided a description of him over the radio. This description sufficed for Officer Prieto to identify Eckel as that man when he saw him in the trailer park. At the command post, Officer Hardy identified Eckel as the man who exited the car. Officer Hardy later testified that he had "no doubt" that Eckel was the man in the car. Zelaya, who saw Eckel on the evening in question, testified that Eckel was driving a white car with an intoxicated woman inside. Finally, the Government presented evidence that Eckel's fingerprints were inside the driver's door of the white car and that his DNA was on the gloves and ski mask obtained from it.

Given all this evidence amassed against Eckel, a reasonable jury could have found beyond a reasonable doubt that he was a felon in possession of a firearm.

IV.

For the reasons set forth above, the District Court did not err regarding the cross-examination of Castellanos or the motion of acquittal.

**AFFIRMED.**

10