[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13161

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRAVIS RYAN PRITCHARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cr-00065-TJC-PDB-1

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Travis Pritchard, a former police officer, appeals his sentence of 420 months of imprisonment and a term of supervised release for life imposed after he pleaded guilty to producing and to possessing child pornography. 18 U.S.C. §§ 2251(a), 2252(a)(4)(B). Pritchard argues, for the first time, that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. We affirm.

Pritchard agreed to plead guilty to the two child pornography crimes in exchange for the dismissal of a second count of producing child pornography, *id.* § 2251(a), and two counts of enticing a minor to engage in sexual activity, *id.* § 2422(b). His plea agreement stated that he faced a cumulative sentence between 15 and 50 years of imprisonment followed by a term of supervised release ranging from five years to life.

Pritchard admitted that, while an officer with the Clay County Sheriff's Office, he met his 15-year-old victim, A.S., near a school that she and his son attended. During their daily rendezvous, Pritchard gained A.S.'s trust by offering to be a "family friend" and help her with homework. Pritchard persuaded A.S. to send him through Snapchat more than one dozen nude photos of herself and he sent her at least 11 nude photographs of himself. A.S.

disclosed her age before they had sex, and Pritchard asked her to keep their relationship a secret or else "he could lose his family, his job and get in trouble with the military." For about five months, Pritchard had sex with A.S. weekly in her room by entering the house through her bedroom window between midnight and 2:00 a.m. Fearing retribution against her family if she broke off the relationship, A.S. disclosed to a friend. The friend informed A.S.'s mom of the relationship, and she reported Pritchard's crimes to local authorities. Investigators arrested Pritchard after reading a text message he sent A.S. to arrange a "quickie" in his patrol car. The investigators discovered on Pritchard's cellular telephone the nude photographs A.S. had sent him, messages they had exchanged via text and Snapchat, and an encrypted digital folder containing multiple photographs and videos of child sexual abuse. Investigators also viewed a video that A.S. had recorded at 2:12 a.m. of Pritchard in her bedroom and discovered semen matching his DNA on a pair of A.S.'s shorts.

Pritchard's presentence investigation report provided a combined total offense level of 44, a criminal history category of I, and a combined maximum sentence of 600 months of imprisonment, United States Sentencing Guidelines Manual § 5G1.2(b) (Nov. 2018). His offense level included increases for being a repeat and dangerous child sex offender, *id.* § 4B1.5(b)(1), the young age of his victim, *id.* § 2G2.1(b)(1)(B), his sexual misconduct, *id.* § 2G2.1(b)(2)(A), his role in A.S.'s distribution of sexually explicit material, *id.* § 2G2.1(b)(3), and his use of a smartphone, *id.*

§ 2G2.1(b)(6)(B)(ii). His offense level also included increases for possessing materials depicting children under 12 years old, *id.* § 2G2.2(b)(2), materials depicting sadistic or masochistic conduct or violence, *id.* § 2G2.2(b)(4)(A), his pattern of sexually abusing or exploiting a minor, *id.* § 2G2.2(b)(5), his use of a computer, *id.* § 2G2.2(b)(6), and his possession of 600 or more images, *id.* § 2G2.2(b)(7)(D). The presentence report also stated that investigators discovered that Pritchard had "sexually charged communications, including photos" of other young girls who he met at a trampoline park and at high school football games.

Pritchard requested a sentence of 240 months of imprisonment. He argued that his service in the military and as a police officer, the childhood sexual abuse perpetrated on him by his brother, his post-traumatic stress disorder, and his alcoholism caused an escalating pattern of behavior in which he had targeted progressively younger girls. Dr. Harry Krop testified that Pritchard suffered from post-traumatic stress disorder, severe alcohol use disorder, and adjustment disorder with depression and that his conduct did not square with having "a paraphilic disorder or a sexual disorder."

The prosecutor responded that Pritchard's offense and his recidivism warranted a maximum penalty. The prosecutor introduced text messages Pritchard sent to intimidate and cajole a young woman with whom, as soon as she turned 18, he had sex several times a week in his patrol car and who he abused violently on at least one occasion. Pritchard harassed the young woman after she ended their relationship, including sending her a message, I "can

come to your house now if I wanted to there's no way you can stop me I'm a cop." The prosecutor also read a letter written by another victim who, after meeting Pritchard at a "trampoline place" when she was 16, began receiving sexual messages and nude photos about twice a month from him.

The district court sentenced Pritchard to 420 months of imprisonment consisting of 360 months for producing child pornography and a consecutive term of 60 months for possessing child pornography. The district court also imposed supervised release for life subject to "the necessity of [him] continuing on supervised release . . . be[ing] checked every five years by probation." The district court described "the conduct here by Mr. Pritchard []as just evil" and chastised him for "tak[ing] advantage of those who are vulnerable and young and unable to defend themselves, especially . . . [as] a law enforcement officer, who's using . . . the color of the law and . . . his authority to help him to perpetrate these crimes." The district court also decided "to take with a grain of salt" the expert testimony that Pritchard was amenable to treatment and unlikely to reoffend, because the abuse of A.S. "was a—kind of a modis operandi for . . . Pritchard, as opposed to a one-time situation," and because his abuse of his authority "to the lengths he did . . . in how he approached these young girls" suggested he would recidivate. But the district court took into account that Pritchard was "a damaged person" due to life experiences, including his childhood sexual abuse and "horrific" experiences in combat and as a police officer.

As Pritchard concedes, because he failed to present his Eighth Amendment argument to the district court, we review for plain error. *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018). Pritchard can obtain relief only if he proves that the district court committed an error that is plain and that affects his substantial rights. *Id.*

"Outside the context of capital punishment cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle." *Id.* at 1335–36. That principle "forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Farley*, 607 F.3d 1294, 1341 (11th Cir. 2010). So "outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [are] exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289–90 (1983) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). "This is so because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes." *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005) (internal quotation marks omitted).

Pritchard's sentence of 420 months of imprisonment followed by supervised release for life does not plainly violate the Eighth Amendment. "Generally, sentences within the statutory limits are neither excessive, nor cruel and unusual under the Eighth Amendment." *United States v. Bowers*, 811 F.3d 412, 432 (11th Cir. 2016) (internal quotation marks omitted). And because plain error requires "an error that is obvious and is clear under current law[,]"

"there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) (internal quotation marks omitted). Pritchard identifies no binding precedent, nor does our research reveal any, holding that a child molester who cajoled his victim into photographing herself in the nude and snuck into her home to abuse her in her bed, who exploited the public trust and public property to prey on and violate young girls, and who possessed numerous photographs depicting children being subjected to sadistic or masochistic conduct requires a sentence less than the middle of his advisory guideline range or a term of supervised release less than life. Furthermore, Pritchard fails to establish his sentence was so disproportionate to his crimes that, under plain error review, it would be considered cruel and unusual.

We **AFFIRM** Pritchard's sentence.