[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13174

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRACY LAMONT MILES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20687-JEM-1

_____

Before WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Tracy Miles appeals his conviction for being a felon in possession of a firearm, in violation of 28 U.S.C. § 922(g)(1). There are three issues on appeal. First, Miles argues that the district court erred in finding a government witness credible at a hearing and denying his motion to suppress based on the witness's testimony. Second, he contends that the cumulative effect of multiple errors at trial, including prosecutorial misconduct and evidentiary errors, deprived him of his right to a fair trial under the Sixth Amendment. Third, he asserts that his 108-month sentence must be vacated because his prior conviction[1] under Fla. Stat. § 893.13(1)(a)(2) did not involve a "controlled substance offense" for purposes of the career offender sentencing enhancement under § 4B1.2(b) of the Sentencing Guidelines. After thorough review, we find no reversible error and therefore affirm.

## I.    BACKGROUND

Because Miles raises challenges to three parts of his criminal proceedings, we discuss the relevant facts of each part in turn.

---

[1] Miles's motion to supplement the record with a certified judgment of his prior Florida conviction is GRANTED.

A.    Suppression Hearing

A grand jury indicted Miles on one count of possession of a firearm by a convicted felon. Before trial, he moved to suppress the firearm, arguing that his arrest and subsequent search were unlawful under the Fourth and Fourteenth Amendments. A magistrate judge conducted an evidentiary hearing at which Miami Dade Police Department ("MDPD") Detectives Jonathan Ortiz and Yuneski Arriola testified about the events leading to Miles's arrest and the search that produced the firearm.

Ortiz was in an unmarked vehicle on an undercover proactive detail near Broadway Park, an area officers knew to be high in crime, particularly violent crimes and drug offenses. Ortiz testified that, as he pulled up to the park, he saw an unknown individual approach Miles. Ortiz was around 150 feet away, but his view was unobstructed, and it was light outside. Ortiz observed the pair engage in a conversation. Then, the individual extended his hand to Miles while holding something. Miles took the item, put it in his front right pants pocket, and extended his hand—which was also holding an object—back toward the individual. The individual took the object and then walked away, and detectives never apprehended the individual.

Based on his training and experience, Ortiz concluded that he had witnessed a hand-to-hand drug transaction. Ortiz began to move closer to Miles, but Miles, with his eyes on Ortiz, stepped back and reached in a grabbing motion toward the right rear side of the waistband of his pants. Given Miles's movements and Ortiz's

experience that people conducting drug transactions often carry firearms, Ortiz believed that Miles had a firearm in his waistband. After Miles removed his hand from his waistband, Ortiz called for backup and gave a description of Miles, adding that Miles was armed.

Arriola, also in an unmarked vehicle, arrived quickly. He testified that, as he approached the scene, Miles was holding the right rear side of his waistband as if he had a firearm. Arriola then turned on his vehicle's lights to show that he was law enforcement, and Miles stopped clutching at his side. Arriola drew his firearm as he exited his vehicle and ordered Miles to put his hands up. Miles stepped back, looking behind himself. When he saw other officers arriving behind him, Miles stopped and put his hands up. Arriola then took Miles to the ground.

Arriola conducted a pat-down and recovered a firearm from the right rear side of Miles's waistband, the same area where Ortiz and Arriola had observed Miles reaching. After finding the firearm, the detectives also conducted a full search of Miles's person, recovering currency from his front right pants pocket that was separated into "quick-count bundles," consistent in the officers' experience with hand-to-hand drug transactions. Doc. 46 at 27.[2] The detectives also recovered a wallet with cash in it from Miles's left rear pocket.

---

[2] "Doc." numbers refer to the district court's docket entries.

During the suppression hearing, defense counsel introduced photographs of the park. Ortiz testified that the photographs failed to depict the exact vantage point where he was positioned. He re-asserted that he had observed the hand-to-hand drug transaction clearly.

Following the evidentiary hearing, the magistrate judge entered a report and recommendation ("R&R"), recommending that the district court deny the motion to suppress. The magistrate judge found Ortiz's and Arriola's testimony credible and, based on that testimony, found that the detectives had reasonable suspicion to detain Miles and pat him down.[3] The magistrate judge also found that Ortiz could see clearly because he was 150 feet away from Miles with an unobstructed view and it was light outside. The magistrate judge noted the photographic evidence but rejected Miles's argument—that Ortiz was not credible because it was impossible for him to have seen a hand-to-hand transaction from his location—because Miles offered only speculation, with no supporting evidence to counter Ortiz's credible testimony. Over Miles's objections, the district court adopted the R&R and denied the motion to suppress.

---

[3] The magistrate judge did not address Miles's argument about the legality of the subsequent search of his person. Miles did not pursue the argument further, however, in his objections to the R&R or by otherwise raising it to the district court.

### B.    Trial

Miles proceeded to trial. During opening statements, the government explained that the detectives who arrested Miles were patrolling Broadway Park to prevent crime. Ortiz and Arriola testified, reiterating their testimony from the suppression hearing.[4]

During Ortiz's direct examination, the prosecutor asked questions about the detectives' actions and observations during their search of Miles's person following his arrest. While examining Ortiz, the prosecutor several times used the pronoun "we" to refer to law enforcement.[5] Ortiz responded to the questions on direct examination in a manner consistent with his testimony at the suppression hearing. Ortiz also testified that, after Miles was arrested and transported to the police station, Miles asked what he was being charged with. After Ortiz advised him of the charge—being a felon in possession of a firearm—Miles responded that he "knew it was hot and he wasn't looking for [serial] numbers." Doc. 85 at 59. Ortiz testified that he believed the term "hot" to mean something that was contraband or illegal and understood Miles to be referring to the firearm recovered during the arrest.

---

[4] Two additional responding MDPD officers testified about Miles's arrest. Both MDPD officers testified that they observed the firearm in Miles's waistband once he was arrested.

[5] For example, the prosecutor asked, "did we find any drugs on [Miles]?" Doc. 85 at 53-54.

Next, Arriola testified that he had conducted over 100 investigations involving narcotics and had received training relating to narcotics. He testified that when he arrived at the park, he observed Miles holding the right rear side of his waistband. The prosecutor asked, "based on your training and experience, how common is it for firearms to be . . . concealed in this area of the body?" *Id.* at 126. Miles objected on the ground that the answer would call for expert opinion. The district court overruled the objection, stating, "[h]e's an expert based on his experience and training. I'll permit it." *Id.* Arriola responded that, in his experience, it was very common for people to carry firearms in their waistbands. In testifying that he recognized a photograph of the firearm, he stated that he remembered that the serial number on the firearm found in Miles's waistband was scratched off.

The prosecutor asked Arriola why people who sell drugs separate money into different pockets. Miles objected based on a lack of foundation and because the answer would call for speculation. The district court overruled the objection. Arriola answered that, based on his experience, individuals will split the money into multiple pockets "because either they're separating the money for the different type of drugs that they have, or also if they're working for somebody, the money that belongs to the owner of the drugs and the money that belongs to the individual selling the drugs." *Id.* at 138. Arriola also testified that he understood the term "hot," as used by Miles, to mean that the firearm was probably stolen or used in another crime.

After the government rested, Miles did not offer any evidence. In closing argument, the prosecutor stated that the only issue in the case was whether Miles possessed a firearm and that evidence of the alleged drug transaction was only offered for context as to why the officers investigated Miles. In Miles's closing argument, he asserted that the officers who testified at the trial were lying about his possessing the firearm, implying that the officers planted the weapon on him. The prosecutor's rebuttal refuted that assertion, and Miles objected several times throughout. The jury ultimately returned a guilty verdict.

## C.     Sentencing

The U.S. Probation Office prepared a presentence investigation report ("PSR") to assist the district court in determining Miles's sentence. The PSR calculated a base offense level of 24, under § 2K1.2(a)(2) of the Sentencing Guidelines, because Miles committed the instant offense after sustaining two felony convictions for a crime of violence or a controlled substance offense. One of the two felony convictions was for a controlled substance offense: a prior conviction in Florida for "Possession with Intent to Sell, Manufacture, or Deliver a Controlled Substance (Cocaine)." But the certified judgment for that offense, with which Miles supplements the record on appeal, shows that Miles was convicted under Fla. Stat. § 893.13(1)(a)(2), which does not include cocaine. Miles now argues that his prior conviction is not a "controlled substance offense" under the Sentencing Guidelines. But Miles failed to object to his base offense level calculation at sentencing. With a criminal history

category of III, Miles's guideline range was 97 to 120 months' imprisonment. The district court sentenced Miles to 108 months' imprisonment. Miles now appeals.

## II.    LEGAL STANDARD

We apply a mixed standard of review to a district court's denial of a motion to suppress, reviewing the district court's factual findings for clear error and its legal determinations *de novo*. *United States v. McCullough*, 851 F.3d 1194, 1199 (11th Cir. 2017). The evidence is viewed in the light most favorable to the party that prevailed on the motion. *Id.*

We ordinarily review claims of prosecutorial misconduct *de novo*. *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). But when a defendant does not object at trial to the prosecutor's conduct, we review only for plain error. *See id.* at 1306–07.

To show plain error, the defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Smith*, 459 F.3d 1276, 1283 (11th Cir. 2006). Further, if the first three conditions are met, we may correct a forfeited error only if the error seriously affected the fairness or integrity of judicial proceedings. *Id.* "An error is not plain unless it is contrary to explicit statutory provisions or" controlling precedent from either the Supreme Court or this Court. *United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009).

We ordinarily review evidentiary rulings for an abuse of discretion. *United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195,

1208 (11th Cir. 2009). "An abuse of discretion occurs where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014) (internal quotation marks omitted). We will "overturn evidentiary rulings only when the moving party has proved a substantial prejudicial effect." *Id.* (internal quotation marks omitted). But when a party raises a claim of evidentiary error for the first time on appeal, it is reviewed only for plain error. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

We typically review *de novo* whether a prior conviction is a controlled substance offense under § 4B1.2(b) of the Sentencing Guidelines. *United States v. Lange*, 862 F.3d 1290, 1293 (11th Cir. 2017). But such arguments raised for the first time on appeal are reviewed for plain error. *See id.*

## III.    ANALYSIS

We first discuss the district court's finding that Ortiz was credible, which led to the court's denial of Miles's motion to suppress. Second, we examine Miles's arguments about prosecutorial misconduct and evidentiary errors and whether the cumulative effects of such errors rendered Miles's trial unfair. Third, we take up Miles's challenge to the base offense level that the court used to sentence him.

### A.    Suppression Motion

Miles challenges the district court's finding that Ortiz was credible, arguing that the photographs of the park the defense

introduced show that Ortiz could not have seen a drug transaction from where he was positioned. *See* Docs. 31-2; 61-1 at 3. He contends that, because any reasonable suspicion for stopping and searching him was predicated on Ortiz's incredible testimony, the court erred in denying his suppression motion.

We accept a factfinder's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255–56 (11th Cir. 2015) (internal quotation marks omitted). "Thus, we defer to the district court's factual determinations unless the district court's understanding of the facts is 'unbelievable.'" *Id.* at 1256.

Here, viewing the evidence in the light most favorable to the government, the prevailing party, the district court did not clearly err in finding Ortiz's testimony credible. *See McCullough*, 851 F.3d at 1199. Ortiz testified that he viewed, unobstructed and in daylight from 150 feet away, what he believed to be a hand-to-hand drug transaction. The court rejected Miles's argument that Ortiz was not credible based on the photographic evidence because, according to Ortiz, the photographs depicted a different location or angle from where Ortiz stood, and Miles presented no evidence to the

contrary. Thus, we cannot say that the district court's determination was "unbelievable." *See Holt*, 777 F.3d at 1256.[6]

## B.    Cumulative Error

Miles argues that cumulative trial errors deprived him of his right to a fair trial. He points to a host of trial errors, which broadly fall into two broad groups: (1) challenges to the government's conduct and (2) evidentiary errors. We discuss the two groups of errors in turn, and then consider (3) whether the cumulative effect of such errors violated Miles's right to a fair trial.

### 1.    Prosecutorial Misconduct

We have adopted a two-part test for determining whether a prosecutor's remarks during trial constitute misconduct, focusing on "whether the remarks were improper and whether they prejudicially affected the defendant's substantial rights." *United States v. Lacayo*, 758 F.2d 1559, 1565 (11th Cir. 1985). To show that his substantial rights have been affected, the defendant must show that "there is a reasonable probability that, but for the remarks, the outcome would [have been] different." *United States v. Adams*, 74 F.3d 1093, 1097 (11th Cir. 1996).

---

[6] Because Miles failed to argue on appeal that Ortiz's testimony, if credible, did not establish reasonable suspicion to stop him, we deem this argument abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Even if we were to reach its merits, however, we would affirm the district court because, based on Ortiz's observations, the officers had reasonable suspicion to stop Miles and pat him down.

Miles asserts that the government weaved an inflammatory narrative about community safety into its prosecution by implying that Miles's arrest prevented a shooting or other serious crime. He also contends that the government bolstered its witnesses by using the term "we" when discussing their actions at Miles's arrest. Because Miles did not raise these issues before the district court, we review them for plain error. *See Merrill*, 513 F.3d at 1306–07. But no plain error occurred: neither asserted error is contrary to precedent from either the Supreme Court or this Court. *See Schultz*, 565 F.3d at 1357.

Miles also argues, as he did before the district court, that the government committed misconduct during its closing argument by making statements that improperly bolstered its witnesses, denigrated the defense, inserted facts not in evidence, and placed itself in the jury box. Assuming for the sake of argument that such remarks were improper, the government's statements did not amount to prosecutorial misconduct because Miles failed to show that, but for the remarks during closing arguments, he would not have been convicted. *See Adams*, 74 F.3d at 1097. The government offered substantial evidence of Miles's guilt through multiple MDPD officers' testimony.

### 2.    Evidentiary Errors

Miles asserts that the government elicited improper lay opinions from Ortiz and Arriola. Specifically, Miles challenges Ortiz's and Arriola's testimony about what they understood "hot"

to mean. Miles failed to object to this testimony before the district court.

He also challenges Arriola's testimony that it was common for people conducting drug transactions to separate money into different pockets. Miles objected to this testimony, but on a different basis. *See United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995) ("To preserve an issue for appeal . . . an objection on other grounds will not suffice.").

Thus, we review both these challenges for plain error. *See Jernigan*, 341 F.3d at 1280.

Miles cannot show error, let alone plain error, because the testimony in question was based on their professional experience as police officers. *See United States v. Novaton*, 271 F.3d 968, 1008–09 (11th Cir. 2001) (affirming, based on law enforcement agents' experience as police officers, the admission of their testimony about the meaning of code words used by the defendants).

For the same reason, Miles's preserved challenge to Arriola's testimony—that it was common for individuals to carry their guns in the area that he observed Miles holding—fails. *See id.* Miles further contends that the district court compounded its error by calling Arriola an expert. Even if the district court abused its discretion by calling Arriola an expert, Miles failed to show that the comment had a substantial prejudicial effect, as Arriola's testimony was corroborated by other witnesses' testimony. *See Austal, U.S.A., L.L.C.*, 754 F.3d at 1248.

In addition, Miles challenges the district court's admission of parts of Arriola's testimony that he contends implicated him in other crimes and thus was improper evidence of prior bad acts in violation of Federal Rule of Evidence 404(b). Specifically, he challenges Arriola's testimony (1) about the meaning of "hot," (2) that the serial number on the firearm was altered, and (3) about why someone might separate money in pockets. Because Miles did not raise these challenges before the district court, we review them for plain error. *See Jernigan*, 341 F.3d at 1280.

No plain error occurred because the challenged testimony was relevant and "necessary to complete the story of the crime" or "inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (explaining that evidence of criminal activity other than the charged offense falls outside the scope of Fed. R. Evid. 404(b) in these circumstances). The officers' testimony about the meaning of "hot," as used by Miles, and about separating money was necessary to complete the story of the crime. This testimony refuted Miles's implicit assertion that the officers planted the gun on him and supported Ortiz's testimony that he observed a hand-to-hand drug transaction—the observation that led to Miles's arrest for the instant conviction. The testimony about the serial number was inextricably intertwined with the evidence regarding the charged offense, as demonstrated by Arriola's testimony that he recalled the serial number being scratched off when he explained how he recognized a photograph of the firearm introduced at trial.

### 3.    Cumulative Error

Miles next contends that the cumulative impact of the errors discussed above prejudicially affected his substantial rights, but again we disagree. Under the cumulative error doctrine, even if individual judicial errors would be insufficient to warrant reversal, the defendant may have been denied a fair trial when the effect of all the errors is evaluated cumulatively. *United States v. Lopez,* 590 F.3d 1238, 1258 (11th Cir. 2009). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Id.* (internal quotation marks omitted). Assuming the district court erred in some of these respects, we nonetheless conclude, from our review of trial as a whole, that Miles was not deprived of a fundamentally fair trial.

### C.    Sentencing

Miles argues that his previous Florida conviction under Fla. Stat. § 893.13(1)(a)(2) was not a "controlled substance offense" under the Sentencing Guidelines. First, he asserts that his statute of conviction did not include cocaine. Second, he contends that, because § 4B1.2(b) of the Sentencing Guidelines does not define the term "controlled substance," we should look to the definition in the Controlled Substances Act ("CSA"), 21 U.S.C. § 802(6). He argues that Fla. Stat. § 893.13(1)(a)'s definition of a controlled substance is broader than the CSA because Fla. Stat. § 893.13(1)(a)

includes propylhexedrine, which is not a federally-scheduled substance.

A defendant may be classified as a career offender if: (1) he is at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is either a "crime of violence" or a "controlled substance offense"; and (3) he has at least two prior convictions of either a "crime of violence" or a "controlled substance offense." U.S. Sent'g Guidelines Manual § 4B1.1(a) (U.S. Sent'g Comm'n 2021). A "controlled substance offense" is an offense under federal or state law, punishable by more than one year of imprisonment, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, or possession of a controlled substance, with intent to manufacture, import, export, distribute, or dispense. U.S. Sent'g Guidelines Manual § 4B1.2(b) (U.S. Sent'g Comm'n 2021).

Miles's arguments are foreclosed by precedent. In *United States v. Smith*, we held that a conviction under Fla. Stat. § 893.13 is a "controlled substance offense" under § 4B1.2(b) of the Sentencing Guidelines. 775 F.3d 1262, 1268 (11th Cir. 2014). We rejected the argument that Fla. Stat. § 893.13's definition of a controlled substance was too broad and must be tied to statutory federal analogues or generic federal definitions. *Id.* at 1267; *see also United States v. Pridgeon*, 853 F.3d 1192, 1200 (11th Cir. 2017) (rejecting the argument that *Smith* was wrongly decided and affirming *Smith*'s holding that convictions under Fla. Stat. § 893.13 qualify as "controlled substance offenses" under the Sentencing Guidelines).

Under the prior panel precedent rule, we are bound by a published prior panel decision "unless and until it is overruled by us sitting en banc or by the Supreme Court." *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016).

Because Miles did not object in the district court to the determination that he was a career offender under the Guidelines, we review his claim for plain error. *See Lange*, 862 F.3d at 1293. The district court did not plainly err in determining that Miles's prior Florida conviction qualified as a controlled substance offense under the Sentencing Guidelines. To the contrary, our prior decisions in *Smith* and *Pridgeon* foreclose any argument that a conviction under Fla. Stat. § 893.13 is not a "controlled substance offense" under § 4B1.2(b) of the Sentencing Guidelines, or that Fla. Stat. § 893.13's definition of a controlled substance is overbroad or must be tied to a federal analogue. *See Pridgeon*, 853 F.3d at 1198, 1200; *Smith*, 775 F.3d at 1267–68. We are bound by these holdings under the prior panel precedent rule. *See Cruickshank*, 837 F.3d at 1187. Thus, Miles's prior Florida conviction under Fla. Stat. § 893.13(1)(a)(2) qualified as a "controlled substance offense" under § 4B1.2(b) of the Sentencing Guidelines, and the district court did not err in imposing the career offender enhancement. *See* U.S. Sent'g Guidelines Manual § 4B1.1(a).

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court on all grounds.

**AFFIRMED.**