[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15739

_____

D.C. Docket No. 4:15-cr-00024-RH-CAS-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PAUL KENNETH PRIDGEON,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 12, 2017)

Before TJOFLAT, HULL, and O'MALLEY[*], Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit,
sitting by designation.

Defendant Paul Pridgeon appeals his sentence totaling eighty-four months' imprisonment. A jury convicted Pridgeon of one count of possession with intent to distribute five grams or more methamphetamine and one count of distribution of methamphetamine. On appeal, Pridgeon contends that the district court erred in sentencing him as a career offender under the United States Sentencing Guidelines. After careful review and with the benefit of oral argument, we affirm Pridgeon's sentence.

## I.  BACKGROUND

### A.    Facts Underlying Pridgeon's Convictions

In the early morning hours of March 1, 2015, around four-thirty or five o'clock, defendant Pridgeon called his neighbor, Jessie Boyington. During that call, Pridgeon asked Boyington for help, telling Boyington that someone assaulted him. Boyington went to Pridgeon's trailer home, where he found Pridgeon badly beaten. Pridgeon asked Boyington to drive him to the hospital, but Boyington called emergency services instead.

After Boyington called for an ambulance, defendant Pridgeon walked out of his trailer with something in his hand. Pridgeon asked Boyington to "put something up for him," but Boyington refused. Boyington then watched Pridgeon walk toward a toolbox sitting on the ground outside the trailer. Boyington stayed with Pridgeon until an ambulance arrived.

2

Around six o'clock that same morning, before the ambulance took Pridgeon away, Deputy Joseph Clement of the Taylor County Sheriff's Office arrived at Pridgeon's home. Upon arrival, Deputy Clement spoke briefly with Pridgeon about the assault. Deputy Clement then spoke with Boyington, who pointed out Pridgeon's toolbox. Deputy Clement inspected the area around the toolbox and found a bag containing two pill bottles and an electronic scale. According to Deputy Clement, one of the pill bottles contained a substance that appeared to be crystal methamphetamine and the other contained what appeared to be marijuana. With the help of other investigators, Deputy Clement then secured and processed the scene around Pridgeon's home.

Later on the morning of March 1, 2015, Investigator Rusty Davis, also of the Taylor County Sheriff's Office, interviewed Pridgeon at Doctor's Memorial Hospital in Taylor County. At this initial interview, Pridgeon told Davis that he was with an individual named Pamela Painter just before the assault. Pridgeon also told Davis that, around two o'clock in the morning, while Pamela Painter was with him, he walked out of his trailer and was beaten by an unknown man wielding a crowbar. At trial, Davis testified that Pridgeon was "evasive" about why Pamela Painter was at his trailer at that time of night. Davis further testified that he knew Pamela Painter was married to an individual named Billy Painter and that he suspected the incident was related to a drug deal.

3

On March 2, 2015, after defendant Pridgeon was transported to a different hospital in Tallahassee, Davis met with Pridgeon for a second interview. This time, Davis was accompanied by two other investigators, one of whom recorded the conversation. At trial, the prosecution played the recording for the jury. Davis testified that Pridgeon spoke to him voluntarily and was aware that the conversation was being recorded.

During this March 2, 2015 interview, Pridgeon admitted to investigators that he tried to hide drugs while Boyington was at his trailer the morning of the assault. The majority of the conversation, however, focused on who may have attacked Pridgeon and what may have motivated the attacker. At one point during the conversation, Davis asked Pridgeon whether the assault could have been part of an effort to rob Pridgeon during a drug deal.

To determine whether defendant Pridgeon was trafficking in narcotics, Davis and other law enforcement officers developed a confidential source to help them conduct a controlled purchase of methamphetamine from Pridgeon. Before the controlled purchase, investigators recorded a phone conversation in which the confidential source agreed to buy two grams of methamphetamine from Pridgeon.

On May 18, 2015, while law enforcement surveilled and recorded the meeting, the confidential source met with and purchased approximately two grams of methamphetamine from Pridgeon. During the controlled purchase, Pridgeon

4

asked the confidential source whether he would be willing to help him sell drugs, but the confidential source declined.  After leaving the meeting with Pridgeon, the confidential source turned the narcotics over to the investigators.  The investigators then sent the methamphetamine—both the amount seized from Pridgeon's residence after the assault and the amount recovered from the controlled purchase—to a lab for chemical analysis.  Based on the average purity of drugs involved in this type of transaction and the quantities recovered from Pridgeon, the chemist determined that, in total, the drugs contained over seventeen grams of pure methamphetamine.

On July 7, 2015, a grand jury indicted defendant Pridgeon on one count of possessing with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(viii), and one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).  Pridgeon pled not guilty and proceeded to trial before a jury on September 14 and 15, 2015.  At the close of the government's case, Pridgeon declined to testify and the defense rested without presenting evidence.  On September 15, 2015, the jury found Pridgeon guilty on both counts in the indictment.

## C.    Sentencing

In advance of Pridgeon's sentencing, the probation officer prepared a Presentence Investigation Report ("PSR").  Applying the 2014 Sentencing Guidelines, the PSR indicated a base offense level of twenty-six and criminal history score of nine, yielding a criminal history category of IV.  Without a career offender increase, Pridgeon's guidelines range was 92 to 115 months' imprisonment.  U.S.S.G. ch. 5, pt. A (U.S. Sentencing Comm'n 2014).

The PSR indicated, however, that Pridgeon previously was convicted of several Florida felony offenses.  In 1997, Pridgeon was convicted of resisting an officer with violence.  And in 2006, Pridgeon was convicted of sale or delivery of a controlled substance and possession of a controlled substance with intent to sell, in violation of § 893.13 of the Florida Statutes.  Based on these convictions and the other relevant factors, the PSR applied the career offender increase to Pridgeon's guidelines range calculation.  U.S.S.G. § 4B1.1.  With the career offender increase, Pridgeon's offense level was thirty-four and his criminal history category was VI. Id. § 4B1.1(b).  This resulted in a guideline range of 262 to 327 months' imprisonment.  U.S.S.G. ch. 5, pt. A.

On November 12, 2015, Pridgeon filed a response to the PSR in which he objected to the application of the career offender increase.  In particular, Pridgeon argued that his 2006 drug convictions did not qualify as predicate "controlled

substance offenses" within the meaning of the career offender provisions.  See U.S.S.G. § 4B1.2(b).

In his response, Pridgeon argued that his convictions under § 893.13 of the Florida Statutes cannot serve as predicate offenses under the career offender guideline because § 893.13 allows for a conviction regardless of whether the defendant knew that the substance possessed was an illicit controlled substance. Pridgeon acknowledged that this Court rejected that same argument in United States v. Smith, 775 F.3d 1262, 1267 (11th Cir. 2014), but he maintained that Smith was wrongly decided.  In the alternative, Pridgeon argued that the United States Sentencing Commission (the "Commission") exceeded its statutory authority by treating crimes like those in § 893.13, which do not require mens rea as to the illicit nature of the controlled substance, as predicate "controlled substance offenses."

At the sentencing hearing on December 4, 2015, Pridgeon reiterated his objections to the career offender increase, arguing that his Florida drug convictions do not qualify as predicate offenses and that the Commission exceeded its statutory authority in treating them as such.  The district court overruled those objections and accepted the PSR's calculation of Pridgeon's guidelines range as 262 to 327 months' imprisonment.

7

After hearing argument regarding mitigation, the district court explained the rationale for its sentencing decision. The district court noted that, in its view, based on a different method of drug amount calculation and without the career offender increase, Pridgeon's guidelines range would have been fifty-seven to seventy-one months' imprisonment. After considering the appropriate factors, the district court sentenced Pridgeon to eighty-four months' imprisonment on each federal drug conviction, to run concurrently. This appeal followed.

## II. DISCUSSION

On appeal, Pridgeon raises the same two issues that formed the basis of his objections to the PSR. We first review the career offender provisions and then address Pridgeon's arguments in turn.

### A.    Career Offender Provisions

By statute, the Commission is authorized to promulgate guidelines for determining the appropriate sentence in a criminal case. 28 U.S.C. § 994(a). This enabling statute authorizes the Commission to issue policy statements regarding the proper implementation of those guidelines in furtherance of the purposes of sentencing. Id. § 994(a)(2); see 18 U.S.C. § 3553(a)(2).

Section 994(h) of the enabling statute provides that the Commission must assure that the guidelines specify a sentence of imprisonment "at or near the

8

maximum term authorized" for defendants who have two or more of certain felony convictions, as follows:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> (1) has been convicted of a felony that is—
>
> > (A) a crime of violence; or
> >
> > (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and
>
> (2) has previously been convicted of two or more prior felonies, each of which is—
>
> > (A) a crime of violence; or
> >
> > (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

28 U.S.C. § 994(h) (emphasis added).

In compliance with the statutory mandates in §§ 994(a) and 994(h), the Commission promulgated the "career offender" provisions of the sentencing guidelines, which delineate the circumstances under which a repeat felony offender will be subject to an enhanced guidelines range. U.S.S.G. §§ 4B1.1, 4B1.2. Section 4B1.1 of the sentencing guidelines provides that a defendant qualifies as a

9

career offender where (1) the defendant was eighteen years of age or older at the time of the offense of conviction, (2) the current offense of conviction is a felony that constitutes either a "crime of violence" or a "controlled substance offense," and (3) the defendant previously was convicted of at least two felony offenses for either a "crime of violence" or a "controlled substance offense." Id. § 4B1.1(a). If the defendant meets these criteria, he is subject to an increased offense level and a criminal history category of VI. Id. § 4B1.1(b).

At issue here is the meaning of § 4B1.1's term "controlled substance offense," which is defined in § 4B1.2 of the guidelines as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2(b) (emphasis added).

## B.    Pridgeon's Florida Drug Convictions Qualify

First, Pridgeon maintains that his convictions under § 893.13 of the Florida Statutes cannot qualify as predicate "controlled substance offenses" under the career offender provisions because that Florida statute does not include a mens rea

10

element as to the illicit nature of the controlled substance.[1]  Pridgeon contends that, because all of the controlled substance offenses listed in § 994(h) require such a mens rea element, an offense under § 893.13 cannot be the equivalent of an offense "described in" those federal analogues and, thus, cannot be a "controlled substance offense" under the sentencing guidelines.

Specifically, § 893.13 of the Florida Statutes provides that it is unlawful for a person to "sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance."  Fla. Stat. § 893.13.  And § 893.101 of the Florida Statutes provides that "knowledge of the illicit nature of a controlled substance is not an element" of a § 893.13 offense.  Id. § 893.101(2).

Construing the sentencing guidelines and their applicability to the same Florida statute, in Smith we considered and rejected the argument Pridgeon espouses.  Like Pridgeon, the defendant in Smith was subject to the career offender increase based on prior controlled substance convictions under § 893.13.  775 F.3d at 1265.  As we explained in Smith, the definition of "controlled substance offense" in § 4B1.2 requires only that the predicate offense prohibit certain drug-related activities.  Id. at 1267.  This Court also emphasized in Smith that "[n]o element of mens rea with respect to the illicit nature of the controlled substance is

---

[1]We review de novo the district court's application and interpretation of the sentencing guidelines.  United States v. Gibson, 434 F.3d 1234, 1243 (11th Cir. 2006).  Whether the defendant qualifies as a career offender is a question of law that we also review de novo.  Id.

expressed or implied by" § 4B1.2's definition of "controlled substance offense." Id.

In Smith, we looked to the plain language of the "controlled substance offense" definition in § 4B1.2, concluded that the definition was "unambiguous," and held that the rule of lenity did not apply. Id. This Court also pointed out that any presumption in favor of mental culpability also did not apply because the definition was unambiguous. Id. The Smith Court squarely held that the definition of "controlled substance offense" in § 4B1.2 does not require that a predicate state drug offense include an element of mens rea with respect to the illicit nature of the controlled substance. Id. at 1268. In Smith, we properly declined to look to statutory federal analogues in considering § 893.13 because we found that the sentencing guidelines did not define "controlled substance offense" by reference to those analogues and the sentencing guidelines definition was unambiguous. Id.

Pridgeon asserts that Smith was wrongly decided because it did not take 28 U.S.C. § 994(h) into account when determining what constituted a controlled substance offense under § 4B1.2. Pridgeon argues that Smith's reasoning renders § 994(h) superfluous. We are bound to follow Smith. In any event, we agree with Smith's above reasoning. Plus, Pridgeon's § 994(h) argument is at bottom a claim that the Commission was limited to the offenses listed in § 994(h) and thus

12

exceeded its authority in defining "controlled substance offense" in § 4B1.2—which claim we review in detail and reject below.

Thus, we conclude that Pridgeon's convictions under § 893.13 of the Florida Statutes qualify as predicate "controlled substance offenses" for purposes of the career offender enhancement.

## C.    The Definition of "Controlled Substance Offense" Comports with the Commission's Statutory Authority

Second, Pridgeon argues that, if Smith is correct that § 4B1.2(b) of the sentencing guidelines does include offenses under § 893.13 of the Florida Statutes in its definition of "controlled substance offense," the Commission exceeded its statutory authority in promulgating § 4B1.2.  Specifically, by treating crimes without an element of mens rea as to the illicit nature of the controlled substance, like those in § 893.13, as "controlled substance offenses," Pridgeon claims that the Commission acted outside the express directives of 28 U.S.C. § 994(h).[2] Pridgeon's argument ignores the full scope of the Commission's authority under § 994, the Commission's enabling statute.

As Pridgeon notes, the Commission's authority to promulgate the career offender provisions emanates at least in part from § 994(h), which provides that the

---

[2]We review issues of statutory interpretation de novo.  United States v. Castro, 455 F.3d 1249, 1251 (11th Cir. 2006).  Questions of law arising under the sentencing guidelines are also reviewed de novo.  United States v. Smith, 54 F.3d 690, 691 (11th Cir. 1995).

defendant must be penalized with a sentence near the maximum authorized term where the defendant has prior convictions for offenses "described in" several federal controlled substance statutes.  28 U.S.C. § 994(h)(2).  According to Pridgeon, the federal offenses listed in § 994(h) require a showing that the defendant knew of the illicit nature of the controlled substance.  Pridgeon points out that, under Smith and our own interpretation of the sentencing guidelines definition of "controlled substance offense," a conviction under § 893.13, which does not include such a mens rea element, qualifies as a controlled substance offense.  See U.S.S.G. § 4B1.2(b); Smith, 775 F.3d at 1268.  Thus, Pridgeon argues that the Commission's "controlled substance offense" definition is both beyond the scope of its authority under § 994(h) and incompatible with the enumerated offenses listed in § 994(h).

Pridgeon, however, ignores that § 994(h) does not provide the Commission its only authority to enact career offender guidelines.  Simply put, Congress's delegation of career-offender authority to the Commission does not end with the language of § 994(h).  Rather, § 994(a) of the enabling statute vests the Commission with broad authority to promulgate guidelines and policy statements and "provides independent grounds for the career offender provision."  United States v. Weir, 51 F.3d 1031, 1032 (11th Cir. 1995) ("[A]lthough the commentary to section 4B1.1 states that the career offender provision is implementing the

14

mandate of 28 U.S.C. § 994(h), it does not suggest that section 994(h) is the only mandate for that provision."); see also United States v. Smith, 54 F.3d 690, 693 (11th Cir. 1995) (same) ("[T]he authority granted by § 994(a) is implicit in all the provisions of the guidelines.") (quoting United States v. Damerville, 27 F.3d 254, 257 (7th Cir. 1994)).  In Weir, this Court concluded that "the specific offenses listed in section 994(h) are not necessarily exhaustive."  51 F.3d at 1032.

Specifically, in Weir, this Court held that a conviction for conspiracy to possess with intent to distribute marijuana is a "controlled substance offense" under the career offender guideline.  Id. at 1031.  The Weir Court observed that, although § 994(h) does not specifically refer to conspiracy offenses, § 994(a) of that enabling statute "grants sufficient authority to the Commission to include drug conspiracies in its definition of controlled substance offenses."  Id. at 1032.  In addition, we emphasized in Weir that the list of crimes enumerated in § 994(h) is not exhaustive.  Id.  Indeed, we explained that "common sense dictates that conspiring to distribute drugs constitutes a controlled substance offense."  Id.

The Commission's commentaries relating to the career offender provisions confirm that the Commission did not believe that § 994(h) was the sole source of statutory authority it could rely on to promulgate the career offender provisions. The commentary to § 4B1.1 states that § 4B1.1 implements the mandate of § 994(h), but that the Commission also relied on §§ 994(a)-(f) in formulating the

15

overall career offender scheme. U.S.S.G. § 4B1.1 cmt. background. The commentary to § 4B1.2, which provides a list of crimes that constitute "controlled substance offenses," includes a number of crimes not listed in § 994(h). Compare id. § 4B1.2 cmt. n.1 with 28 U.S.C. § 994(h).

Given the broad power vested in the Commission in § 994(a) and recognized in our precedents in Smith and Weir, we also reject Pridgeon's arguments (1) that the more specific provision in § 994(h) controls over the more general principle announced in § 994(a) and (2) that a prior conviction under a state statute that does not require knowledge of the illicit nature of the substance cannot qualify as an offense "described in" the various federal statutes listed in § 994(h).

Pridgeon's arguments fail to appreciate our conclusion in Weir that the list of offenses in § 994(h) was not meant to be exhaustive. 51 F.3d at 1032. Rather than setting out a specific and exclusive list of predicate crimes that trigger maximal punishment, the enumerations in § 994(h) inform the Commission's more general task of establishing appropriate sentencing guidelines and policy pursuant to § 994(a). Put another way, § 994(h) establishes a floor for the career offender category, rather than a ceiling. See United States v. Parson, 955 F.2d 858, 867 (3d Cir. 1992) abrogated on other grounds by Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008). Consequently, Pridgeon's reliance on any alleged incongruity between § 893.13 and the offenses described in § 994(h) is misplaced.

16

As we held in Weir, § 994(a) vests the Commission with authority to define

"controlled substance offense" to include crimes beyond those listed in § 994(h).

More fundamentally, Pridgeon's statutory-authority argument is little more

than a veiled attempt to circumvent our prior panel precedent in Smith, which

squarely held that a § 893.13 offense qualifies as a "controlled substance offense"

despite the fact that the Florida legislature elided the element of mens rea as to the

illicit nature of the controlled substance.  Smith, 775 F.3d at 1267-68.  After all, no

element of mens rea with respect to the illicit nature of the substance is "expressed

or implied" by the § 4B1.2(b) definition.  Id. at 1267.

In sum, we are unpersuaded by Pridgeon's arguments.  The language of

§ 994(h) must be read in conjunction with the general mandate of § 994(a), under

which the Commission enjoys "significant discretion in formulating guidelines."

Mistretta v. United States, 488 U.S. 361, 377, 109 S. Ct. 647, 657 (1989).  We

conclude that the Commission did not exceed its statutory authority in defining

"controlled substance offense" in a way that includes offenses lacking an element

of mens rea regarding the illicit nature of the controlled substance.[3]

---

[3]We recognize that Pridgeon contends that each of the federal drug-related crimes enumerated in § 994(h) includes as an element the defendant's knowledge of the illicit nature of the controlled substance.  Pridgeon argues that the statutory language of 21 U.S.C. § 841 and 46 U.S.C. § 70503 provides that a defendant can only be liable for knowing or intentional violations of those statutes.  See 21 U.S.C. § 841(a); 46 U.S.C. § 70503(a).  As to 21 U.S.C. §§ 952, 955, and 959, Pridgeon points to the 1985 and 1988 versions of the Eleventh Circuit Pattern Jury Instructions, which indicate that these statutes punish only knowing or willful activity.

### III.  CONCLUSION

Based on the foregoing analysis, we affirm both the district court's application of the career offender enhancement and Pridgeon's sentence totaling eighty-four months' imprisonment.

**AFFIRMED.**

---

Ultimately, we need not, and do not, decide the precise mens rea requirements of the federal drug statutes listed in § 994(h) because a conviction under § 893.13 constitutes a "controlled substance offense" under the definition in § 4B1.2 of the sentencing guidelines.  See Smith, 775 F.3d at 1268.  Even assuming arguendo that the federal drug crimes enumerated in § 994(h) require mens rea as to the illicit nature of the controlled substance, this does not mean that the Commission was required to define the term "controlled substance offense" to include such a mens rea element.  See id.