[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-10194

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHARLES KEVIN AGERTON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00027-AW-MAF-1

————————————————

Before WILSON, LUCK, and HULL, Circuit Judges.

PER CURIAM:

Charles Agerton appeals his 135-month sentence for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). On appeal, Agerton argues that the district court erred (1) in sentencing him as a career offender, and (2) in applying a two-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). After careful review, we affirm.

## I.    BACKGROUND

### A.    Offense Conduct

Beginning in the fall of 2019, the Wakulla County Sheriff's Office ("WCSO") in Florida received several citizen complaints about drug activity at a residence in Panacea, Florida. In November 2019, the WCSO Narcotics Unit began to investigate the sale and distribution of illegal drugs from the residence.

In January 2020, the WCSO conducted two controlled purchases of 1.4 and 2.6 grams of methamphetamine from Agerton at the residence. Based on the controlled purchases, the WCSO applied for and was granted a search warrant for the residence.

In February 2020, WCSO officers searched the residence. The officers found Agerton in a bedroom inside the residence. In

that same bedroom, the officers located 90.3 grams of crystal methamphetamine.

During the search, the officers also found 1.7 grams of cocaine, 26.7 grams of marijuana, and drug paraphernalia, including digital scales and small clear plastic baggies. The officers found three other people in the residence and located small amounts of methamphetamine and drug paraphernalia in the residence's other bedrooms. The officers also seized $731 in cash.

Agerton was detained. After he was advised of his *Miranda*[1] rights, Agerton gave a statement to law enforcement. Agerton claimed ownership of the drugs located in the bedroom where he was found. Agerton admitted that he sold drugs for profit to further his drug business.

The total weight of pure methamphetamine purchased in the controlled buys and seized from the residence was 74.9 grams. The total converted weight for all drugs involved in this case was 1,498.61 kilograms.

At the time of his arrest, Agerton had rented and resided at the residence where the drugs were found for approximately four years.

## B.    Agerton's Indictment and Guilty Plea

In June 2021, Agerton was indicted for possession with intent to distribute 50 grams or more of methamphetamine, in

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). In October 2021, Agerton pled guilty to that offense.

## C.    Agerton's Presentence Investigation Report ("PSI") and Objections

The PSI assigned Agerton an offense level of 32 consisting of: (1) a base offense level of 30 under U.S.S.G. § 2D1.1(a)(5), plus (2) two levels under U.S.S.G. § 2D1.1(b)(12) because Agerton maintained a premises for the purpose of manufacturing or distributing a controlled substance.

Next, the PSI applied the greater offense level of 37 under U.S.S.G. § 4B1.1(b)(1) because it concluded Agerton was a career offender. The PSI identified these two prior convictions as qualifying felony convictions of a controlled substance offense: (1) a 2016 Florida conviction for sale of marijuana, and (2) a 2018 Florida conviction for sale of methamphetamine.

Finally, the PSI reduced Agerton's offense level by three under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility. This yielded a total offense level of 34.

The PSI calculated a criminal history category of III based on six criminal history points. Then, the PSI assigned Agerton a criminal history category of VI under § 4B1.1(b) due to Agerton's status as a career offender. With a total offense level of 34 and a criminal history category of VI, Agerton's advisory guidelines range was 262 to 327 months' imprisonment.

Agerton objected to the two-level drug-premises increase under § 2D1.1(b)(12) and to the career-offender designation under § 4B1.1. As to his career-offender status, Agerton argued that his prior offenses did not qualify as predicate controlled substance offenses because Florida's controlled substance statute (1) criminalizes the inchoate offense of attempted sale, (2) does not require the state to prove mens rea as to the illicit nature of the controlled substance, and (3) defines marijuana more broadly than the Controlled Substances Act ("CSA").

### D.    Agerton's Sentencing

On January 3, 2022, at Agerton's sentencing hearing, the district court overruled Agerton's objections to his career-offender status as foreclosed by this Court's precedent.

Next, the district court found that the government met its burden under § 2D1.1(b)(12) to show that Agerton maintained a premises for the purpose of manufacturing or distributing a controlled substance based on the unobjected-to facts in the PSI. These facts included (1) the volume of drugs and drug paraphernalia found at Agerton's residence, (2) the length of time Agerton lived at the residence, (3) law enforcement's two controlled purchases of methamphetamine from Agerton at his residence, and (4) the multiple complaints about drug activity at the residence by people in the neighborhood. The district court thus overruled Agerton's objection to the two-level drug-premises increase and adopted the PSI's guidelines calculations.

Ultimately, the district court (1) determined that a 127-month downward variance from the 262 to 327-month advisory guidelines range was appropriate, and (2) sentenced Agerton to 135 months' imprisonment, followed by 10 years of supervised release.

The district court stated that it had considered all of the 18 U.S.C. § 3553(a) factors, including the seriousness of Agerton's offense, the need to protect the public, and the need to provide a just punishment. The district court also explained that its 127-month downward variance was warranted based on (1) Agerton's age and health, (2) the lack of violence in his criminal history, and (3) the court's finding that "the overall career offender enhancement would have been too great" given the facts of Agerton's case. The district court explicitly stated that it would have imposed the same sentence regardless of how the § 2D1.1(b)(12) drug-premises issue was resolved.

Agerton timely appealed.

## II.    DISCUSSION

On appeal, Agerton contends that the district court erred (1) in designating him as a career offender under § 4B1.1(b)(1), and (2) in applying a two-level drug-premises increase under § 2D1.1(b)(12). We address each issue in turn.

### A.    Career-Offender Designation

A defendant is a career offender under the Guidelines if (1) he was at least 18 years old when he committed the instant

offense of conviction, (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense," and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The career-offender guideline in § 4B1.2(b) defines a "controlled substance offense" as "an offense *under federal or state law*, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b) (emphasis added).[2]

Both of Agerton's relevant drug convictions are under Fla. Stat. § 893.13(1)(a), which provides that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a) (2016); *see also* Fla. Stat. § 893.13(1)(a) (2018) (same).[3]

This Court expressly held in *United States v. Smith* that a drug conviction under Fla. Stat. § 893.13(1)(a) is a "controlled substance offense" under the career-offender provision in U.S.S.G. § 4B1.2(b). 775 F.3d 1262, 1268 (11th Cir. 2014); *see also Pridgeon*, 853 F.3d at 1197–98 (following *Smith*). The *Smith* Court concluded that the

---

[2] We review de novo whether a prior conviction is a "controlled substance offense" under the Sentencing Guidelines. *United States v. Pridgeon*, 853 F.3d 1192, 1198 n.1 (11th Cir. 2017).

[3] Agerton does not dispute that his prior drug convictions are all felonies under Florida law and are punishable by more than one year of imprisonment.

definition of a "controlled substance offense" in § 4B1.2(b) does not require that a predicate <u>state</u> offense include an element of mens rea with respect to the illicit nature of the controlled substance. 775 F.3d at 1268.  In *Smith*, this Court declined to look to statutory federal analogues in considering whether § 893.13(1)(a) was a controlled substance offense because we concluded that (1) the Guidelines do not define "controlled substance offense" by reference to those analogues and (2) the definition of "controlled substance offense" in § 4B1.2(b) is unambiguous.  *Id.* at 1267–68.

Agerton argues that his Florida drug convictions are not "controlled substance offenses" under § 4B1.2(b) because the Florida controlled substance statute, Fla. Stat. § 893.13(1)(a), proscribes a broader range of conduct than § 4B1.2(b)'s definition of "controlled substance offense."  Relying on the categorical approach, Agerton contends that, because § 893.13(1)(a) criminalizes attempt crimes, his Florida drug convictions cannot qualify as controlled substance offenses under § 4B1.2(b).  *See United States v. Dupree*, 57 F.4th 1269, 1277 (11th Cir. 2023) (en banc) (concluding that the definition of "controlled substance offense" in § 4B1.2(b) "unambiguously excludes inchoate offenses").

The problem for Agerton is that this Court recently held in *United States v. Penn* that "[t]he sale of drugs is not an inchoate offense under Florida law."  63 F.4th 1305, 1317 (11th Cir. 2023).  In *Penn*, the defendant argued that his prior Florida drug convictions under § 893.13(1)(a)—the same statute here—did not qualify as serious drug offenses under the Armed Career Criminal Act

("ACCA") because § 893.13(1)(a) is broader and criminalizes the inchoate offense of attempted transfer of a controlled substance. *Id.* at 1308, 1317.

Applying the categorical approach, this Court rejected defendant Penn's arguments and concluded that (1) the least culpable conduct under Fla. Stat. § 893.13(1)(a) is the attempted transfer of a controlled substance; (2) the attempted transfer of a controlled substance constitutes "distributing" under the ACCA; (3) a defendant who attempts to transfer drugs commits a *completed* crime of distribution, not an *inchoate* crime of attempted distribution; and (4) therefore, defendant Penn's prior convictions under § 893.13(1)(a) qualified as ACCA predicates. *Id.* at 1311–17. In so holding, this Court stressed that, "like the crime of distribution under federal law, the crime of selling drugs under Florida law *is not an inchoate offense.*" *Id.* at 1317 (emphasis added).

So too here. Even though Fla. Stat. § 893.13(1)(a) criminalizes the attempted transfer of drugs, this Court held in *Penn* that a defendant who attempts to transfer drugs commits the *completed* crime of distribution, not the *inchoate* crime of attempted distribution. *See id.* at 1311–12, 1316–17. Because Florida's controlled substance statute in § 893.13(1)(a) does not criminalize inchoate offenses, this Court concluded that Florida's § 893.13(1)(a) statute is not broader than the definition of "controlled substance

offense" in the § 4B1.2(b) guideline. *See id*. at 1317.[4] Agerton's case is controlled by our precedent.

Agerton's remaining arguments fare no better. First, Agerton contends that his prior convictions under Fla. Stat. § 893.13(1)(a) do not qualify as predicate "controlled substance offenses" because that Florida statute lacks a mens rea element as to knowledge of the illicit nature of a controlled substance. Second, Agerton asserts that his § 893.13(1)(a) conviction in 2016 for sale of marijuana is not a controlled substance offense under § 4B1.2(b) because Florida's definition of marijuana at the time of his prior conviction in 2016 was broader than the definition of marijuana in the federal CSA. Specifically, Agerton explains that, at the time of his 2016 conviction, Florida law criminalized the sale of hemp, but the CSA's definition of marijuana did not include hemp at the time of his federal sentencing in 2022.[5] *Compare* Fla. Stat. § 893.02(3) (2016), *with* 21 U.S.C. § 802(16).

---

[4] Agerton filed a notice of supplemental authority, requesting that this Court stay his appeal pending resolution of the petition for rehearing en banc filed in *Penn*. Because this Court has since denied the petition in *Penn*, we deny Agerton's request as moot.

[5] By contrast, the government contends that we should compare Florida's definition of marijuana with the federal CSA's definition of marijuana at the time of Agerton's prior conviction in 2016. In 2016, Florida law and federal law both included hemp in the definition of marijuana. *See* Fla. Stat. § 893.02(3) (2016); 21 U.S.C. § 802(16) (2016). We need not reach this issue because we held in *Smith* that the Guidelines do not define "controlled substance offense" by reference to statutory federal analogues, like the CSA. *See Smith*, 775 F.3d at 1268.

Agerton's arguments are also foreclosed by our binding precedent. In *Smith*, this Court concluded that (1) a prior conviction under Fla. Stat. § 893.13(1)(a) qualifies as a "controlled substance offense" under the § 4B1.2(b) guideline, notwithstanding the lack of an element of mens rea with respect to the illicit nature of the controlled substance, and (2) the § 4B1.2(b) guideline does not define "controlled substance offense" by reference to federal statutory analogues. *See Smith*, 775 F.3d at 1267–68; *see also Pridgeon*, 853 F.3d at 1198 ("We are bound to follow *Smith*."); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that a prior panel's holding is binding on all subsequent panels unless the Supreme Court or this Court sitting en banc overrules it). The *Smith* Court did not expressly consider the definition of marijuana, but "a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel." *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006).

In light of our binding precedent, the district court properly concluded that Agerton's prior sale of marijuana and sale of methamphetamine offenses, all violations of Fla. Stat. § 893.13(1)(a), qualified as "controlled substance offenses" under U.S.S.G. § 4B1.2(b). Because Agerton had two convictions for "controlled substance offenses," the district court did not err in determining that Agerton was a career offender under § 4B1.1.

**B.    Drug-Premises Increase**

Agerton also challenges the district court's application of a two-level increase under § 2D1.1(b)(12) for maintaining a premise for drug distribution.  Agerton claims that the government failed to prove that he maintained the home for the "primary purpose" of distributing controlled substances.  *See* U.S.S.G. § 2D1.1 cmt. n.17 (stating manufacturing or distribution need not be the "sole purpose" of the premises, but it must be a "primary or principal," rather than an "incidental or collateral," use for the premises).

We review a district court's factual finding that a defendant maintained a premises for the manufacture or distribution of drugs under the clear-error standard.  *United States v. George*, 872 F.3d 1197, 1205 (11th Cir. 2017).  However, a guidelines calculation error is harmless if (1) the district court stated it would impose the same sentence even if it decided the guidelines issue in the defendant's favor, and (2) the sentence is substantively reasonable.[6] *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006).

Here, as to the merits, the evidence amply supports the district court's fact finding that Agerton maintained a premises for the primary purpose of manufacturing or distributing a controlled substance.

---

[6] We review the substantive reasonableness of a sentence under the deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).

Beginning in the fall of 2019, law enforcement received several citizen complaints about drug activity at Agerton's residence. Then, in January 2020, law enforcement officers conducted two controlled purchases of methamphetamine from Agerton at the residence. When officers searched Agerton's residence, they found him in a bedroom along with 90.3 grams of crystal methamphetamine. The officers also found 1.7 grams of cocaine, 26.7 grams of marijuana, $731 in cash, digital scales, and small clear plastic baggies. After Agerton was detained, he admitted (1) that he owned the drugs located in the bedroom where he was found, and (2) that he sold drugs for profit to further his drug business. Further, at the time his arrest, Agerton had rented and resided at this residence for approximately four years. Based on this evidence, the district court did not clearly err in determining that the § 2D1.1(b)(12) drug-premises increase was appropriate.

Indeed, this evidence is at least comparable to, if not stronger than, the evidence in *United States v. Rodriguez* where this Court affirmed the district court's application of a § 2D1.1(b)(12) drug-premises increase. *United States v. Rodriguez*, ___ F.4th ___, No. 20-13534, 2023 WL 4873851, at *5–6 (11th Cir. Aug. 1, 2023). In that case, this Court observed that (1) law enforcement conducted eight trash pulls outside of Rodriguez's house and found "supplement packaging with unknown white powder, discarded pills, ventilator masks, and gloves," (2) during a search of Rodriguez's home, law enforcement found him trying to flush pills down the toilet, (3) the search of his home revealed "56 grams of

methamphetamine, approximately 300 grams of heroin, approximately 10 grams of counterfeit pills containing methamphetamine, $50,000 in cash, a chemical mask, and two scales," and (4) Rodriguez admitted at his sentencing hearing that he prepared and distributed drugs at his house. *Id.* (stating "[c]ourts should view the totality of the circumstances to determine whether a defendant maintained a premises for drug distribution or manufacture" (quotation marks omitted)).

Alternatively, any alleged error in applying the drug-premises increase under § 2D1.1(b)(12) was harmless for two independent, alternative reasons.

First, the district court, in imposing the 135-month sentence, stated that it would have applied the same sentence regardless of the outcome of the § 2D1.1(b)(12) drug-premises issue. We cannot say, and Agerton does not argue, that his 135-month sentence, which represented a 127-month downward variance, was substantively unreasonable. Thus, any error in calculating the Guidelines was harmless. *See id.*

Second, even if the district court erroneously applied the drug-premises increase under § 2D1.1(b)(12), Agerton's advisory guidelines range would have remained the same because Agerton's career-offender status drove the offense level—not the drug-premises increase. To be sure, the drug-premises increase added 2 levels to Agerton's base offense level, resulting in an adjusted offense level of 32. The PSI, however, applied the 2-level drug-premises increase *before* it assigned Agerton an offense level

of 37 due to his career-offender status. *See* U.S.S.G. § 1B1.1(a)(3), (6) (instructing the court to "apply any appropriate specific offense characteristics" *before* "[d]etermin[ing] from Part B of Chapter 4 any other applicable adjustments"); *id.* § 4B1.1(b)(1) (increasing offense level to 37 if, as here, the offense statutory maximum sentence is life imprisonment). Because the drug-premises increase did not affect the calculation of Agerton's advisory guidelines range, we conclude that any alleged error in applying the § 2D1.1(b)(12) increase was harmless. *See United States v. Sarras*, 575 F.3d 1191, 1220 n.39 (11th Cir. 2009).

### III.    CONCLUSION

For the reasons stated, we affirm Agerton's 135-month sentence.

**AFFIRMED.**