**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-13841

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JACKLIN CHERAMY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20064-DPG-1

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jacklin Cheramy appeals his total 108-month sentence for possession of a firearm by a convicted felon and aggravated identity theft.  He argues that the district court improperly calculated his

Sentencing Guidelines range when it found that his base offense level was 24 under § 2K2.1 of the United States Sentencing Guidelines. He asserts that his 2006 Florida cocaine and marijuana convictions are not valid "controlled substance offenses" because the statutes under which he was convicted criminalized conduct broader than the Guidelines, and the relevant statutes for determining valid predicate crimes are those in effect at the time of his federal sentencing, not those in effect at the time of his prior drug offenses.

## I

Our decision in *United States v. Dubois*, 94 F. 4th 1284 (11th Cir. 2024) (*Dubois I*), issued in March of 2024, resolved Mr. Cheramy's appeal. *See id.* at 1300 ("To sum up, we hold that a 'controlled substance' under [U.S.S.G. §] 4B1.2's definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction, even if it is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing."). But certiorari was sought in *Dubois* and, in January of 2025, the Supreme Court granted certiorati, vacated our decision in *Dubois I*, and remanded for reconsideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). *See United States v. Dubois*, 145 S.Ct. 1041 (2025) (*Dubois II*). We then held Mr. Cheramy's appeal pending a final decision on remand in *Dubois*.

In June of 2025 the panel in *Dubois* issued its decision on remand. *See United States v. Dubois*, 139 F. 4th 887, 888-89 (11th Cir. 2025) (*Dubois III*) (rejecting Second Amendment challenge to 18

U.S.C. § 922(g) in light of *Rahimi* and reinstating its prior opinion in *Dubois I*).  This appeal is therefore now ready for resolution.

## II

We review *de novo* whether a prior conviction is a "controlled substance offense" under the Sentencing Guidelines.  *See United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019).  "Questions of law arising under the [S]entencing [G]uidelines are also reviewed *de novo*."  *United States v. Pridgeon*, 853 F.3d 1192, 1199 n.2 (11th Cir. 2017).

Under the prior-panel-precedent rule, we are bound by a prior panel's decision unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting *en banc*.  *See, e.g., United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  "The prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel."  *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).  *See also Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006) ("[A] prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.").  "But [q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *United States v. Jackson*, 55 F.4th 846, 853 (2022), *aff'd in Brown v. United States*, 602 U.S. 101 (2024).

### III

Under § 2K2.1(a)(2) of the Sentencing Guidelines the defendant's base offense level increases to 24 if he has at least 2 prior convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(2). A defendant without a prior "controlled substance offense" has a base offense level of 14. *See* § 2K2.1(a)(6). As relevant here, § 2K2.1 uses the definition of a "controlled substance offense" found in § 4B1.2(b), which is defined as any

> offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

§§ 4B1.2(b). *See* § 2K2.1, comment. (n.1).

### A

We generally engage in the categorical approach to determine whether a state conviction is a controlled substance offense under the Sentencing Guidelines. *See United States v. Laines*, 69 F.4th 1221, 1233 (11th Cir. 2023). Under the categorical approach, we look only to the elements of the statute under which the defendant was convicted, rather than at the facts underlying his prior convictions. *Id.* We have analyzed the state statute in effect at the time of the defendant's convictions under the categorical

approach. *See, e.g.*, *United States v. Frazier*, 89 F.3d 1501, 1505 (11th Cir. 1996) (analyzing the 1994 version of the statute that the defendant was convicted under); *United States v. Seabrooks*, 839 F.3d 1326, 1338 (11th Cir. 2016) (analyzing the 1995 version of a Florida armed robbery statute the defendant was convicted under).

Under Florida law, it is illegal for a person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance. *See* Fla. Stat. § 893.13(1)(a) (2008-present). The possession of cannabis with intent to sell, manufacture, or deliver is criminalized under the statute. *See* § 893.03(1)(c)(7). In 2016, Florida defined "cannabis" as "all parts of any plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin" and excluded "low-THC cannabis" that was manufactured and sold under the state's medical marijuana laws. *See* § 893.02(3) (2016). In 2019, Florida decriminalized "hemp," which it defined as cannabis with a "total [THC] concentration that does not exceed 0.3 percent on a dry-weight basis." §§ 893.02(3), 581.217(3)(d).

The CSA defines "marihuana" as "the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). It states that "marihuana" does not include "hemp," which is defined as "the plant Cannabis sativa L.

and any part of that plant . . . with a [THC] concentration of not more than 0.3 percent on a dry weight basis." § 802(16)(B)(i). *See* 7 U.S.C. § 1639o(1). The CSA was amended in 2018 to exclude hemp and mature stalks from the definition of marijuana. *Compare* 21 U.S.C. § 802(16)(B) (2017), *with* 21 U.S.C. § 802(16)(B) (2018).

In 2008, Florida law defined "cocaine" as "cocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." Fla. Stat. § 893.03(2)(a)(4) (2008). Florida law prohibited the possession of cocaine with intent to sell, manufacture, or deliver 28 grams or more of cocaine. *See* § 893.135(1)(c)(7). In 2017, Florida removed ioflupane from its definition of cocaine, and defined cocaine as "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine, except that these substances shall not include ioflupane I123." § 893.03(2)(a)(4) (2017-present).

The CSA definition of cocaine includes "[c]ocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 802(17)(D). In 2015, the Code of Federal Regulations was amended to exclude ioflupane from its schedule of controlled substances, which removed it from the federal definition of "cocaine." *Compare* 21 C.F.R. § 1308.12 (b)(4)(ii) (2015), *with* 21 C.F.R. § 1308.12 (b)(4)(ii) (2016).

We have held that a conviction under Fla. Stat. § 893.13 constitutes both a "serious drug felony" under the ACCA and a "controlled substance offense" under § 4B1.2(b). *See United States v.*

*Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) (analyzing convictions under Fla. Stat. § 893.13 from 2007 and 2008).  In relevant part, we rejected the argument that § 893.13's definition of a controlled substance was too broad and must be tied to statutory federal analogues or generic federal definitions.  *See id*. at 1267.  Importantly, we rejected the generic-offense analysis used under the categorical approach and stated that the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b) should be compared to the state offense.  *Id*.

Several years later, we rejected an argument that *Smith* was wrongly decided in a case which involved a claim that convictions under § 893.13 did not qualify as "controlled substance offenses" under the Sentencing Guidelines.  *See United States v. Pridgeon*, 853 F.3d 1192, 1200 (11th Cir. 2017).  We stated that, in *Smith*, the panel "properly declined to look to statutory federal analogues in considering § 893.13 because [it] found that the [S]entencing [G]uidelines did not define 'controlled substance offense' by reference to those analogues and the sentencing guidelines definition was unambiguous."  *Id*.

In *Dubois I*, we held that "a 'controlled substance' under [U.S.S.G. §] 4B1.2's definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction, even if it is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing."  94 F. 4th at 1300.  That aspect of *Dubois I* was reinstated by *Dubois III*, 139 F. 4th at 888-89.

**B**

Mr. Cheramy argues that his 2006 Florida cocaine and marijuana convictions were not "controlled substance offenses" under U.S.S.G. § 4B1.2(b), as incorporated in U.S.S.G. § 2K2.1(a)(6). He summarizes his argument this way: "When Mr. Cherany was convicted of both offenses in 2006, Florida defined cocaine to include ioflupane I123 and defined marijuana to include hemp . . . . When Mr. Cheramy was sentenced in this case, neither ioflupane I123 nor hemp were controlled by the federal CSA. Thus, his prior drug convictions were overbroad, as [Florida] punished a greater range of conduct than does federal law." Appellant's Br. at 5.

That timing argument—which calls for using the state statutory definitions at the time of the defendant's federal sentencing—is foreclosed by *Dubois I*, as reinstated by *Dubois III*. Again, in *Dubois I* we held that "a 'controlled substance' under [U.S.S.G. §] 4B1.2's definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction, even if it is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing." 94 F. 4th at 1300.

**IV**

Based on *Dubois I*, we affirm Mr. Cheramy's sentence.

**AFFIRMED**.